FRANCINE M. FLETCHER, individually and as administratrix,[1] & others[2] *vs.* DORCHESTER MUTUAL INSURANCE COMPANY[3] & another.[4]

Plymouth. January 8, 2002. - August 16, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Negligence,* Spoliation of evidence. *Practice, Civil,* Preservation of evidence.

Discussion of the circumstances in which a duty to preserve evidence arises, and the remedies available for the violation of that duty. [548-551]

This court declined to recognize an action in tort for intentional or negligent spoliation of evidence, given the existence, within the context of the action that is allegedly affected by the spoliation, of sanctions that are carefully tailored to remedy any prejudice stemming from the spoliation, and given the inherently speculative nature in the proof of such a cause of action. [547, 551-553]

CIVIL ACTION commenced in the Superior Court Department on April 17, 1998.

Motions to dismiss were heard by *Richard F. Connon,* J., and entry of separate and final judgment was ordered by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael R. Rezendes* (*Sara J. Trezise* with him) for the plaintiffs.

*Ralph C. Sullivan* for Dorchester Mutual Insurance Company.

*Francis M. Lynch* for Richard Splaine.

SOSMAN, J. The present appeal requires us to determine

---

[1] Of the estates of Maria Vazquez, Paul Fletcher, and Stephen Fletcher, and as mother and next friend of Dominique Vazquez and Kristin Lynch.

[2] Michael Vazquez, individually and as coadministrator of the estate of Maria Vazquez, and as father and·next friend of Dominique Vazquez; and George Fletcher, coadministrator of the estates of Stephen Fletcher and Paul Fletcher.

[3] Doing business as The Norfolk & Dedham Group.

[4] Richard Splaine.

whether we should recognize a cause of action in tort for intentional or negligent spoliation of evidence. A Superior Court judge granted the defendants' motions to dismiss such claims, and the plaintiffs appealed. We transferred the case to this court on our own motion. For the following reasons, we conclude that there is no cause of action for spoliation of evidence and therefore affirm the judgment.

1. *Facts and procedural background.*[5] On April 4, 1995, five young children were trapped and severely burned in a tragic house fire in Scituate. Three of the children died; the two surviving children sustained permanent injuries. The house was owned by Stephen Littleton, who had leased the premises to the victims' family. In the immediate aftermath of the fire, the owner's insurer, the defendant Dorchester Mutual Insurance Company (Dorchester Mutual), retained an expert to investigate the fire scene. That expert, the defendant Richard Splaine, removed certain wiring components and fixtures from the remains of the building approximately two weeks after the fire.

The parents of the children injured and killed in the blaze brought suit against Littleton, alleging that he had failed to maintain the dwelling in a safe and habitable condition.[6] Among the defects alleged was a faulty electrical system,[7] along with inadequate fire detection devices, inadequate fire exits, and inadequate fire fighting equipment. In a separate action (later consolidated with the action against the owner), the parents brought suit against the electrical contractor responsible for the wiring installation.

In that underlying tort action, the parents filed a motion for sanctions, alleging that Splaine's removal of the electrical components from the scene had so altered them as to compromise the parents' ability to prove their claims. They requested

---

[5]The facts are taken from the plaintiffs' complaint, augmented by materials submitted in conjunction with the plaintiffs' opposition to the motions to dismiss.

[6]Along with the tort claims against the owner, the parents alleged unfair claim settlement practices, in violation of G. L. c. 93A and G. L. c. 176D, § 3 (9), against Dorchester Mutual Insurance Company.

[7]The fire marshal's report identified antiquated wiring, surrounded by blown-in insulation that prevented the dissipation of heat, as the likely cause of the fire.

that judgment be entered in their favor or, in the alternative, that the owner "be precluded from utilizing, commenting upon or offering any evidence spoiled by Defendants, including the insulation, circuit, switches and components removed, altered or modified by Defendant's experts or agents." Littleton argued in response that Splaine had retained the removed items, and that they were still available for trial with no prejudice to the parents' case. After an evidentiary hearing on the motion, the judge concluded that the plaintiff parents had "failed to prove that defendant has materially altered, damaged or destroyed any evidence in this case" and therefore denied the motion for sanctions.

Meanwhile, the parents had filed the present action against Dorchester Mutual and Splaine, alleging counts of negligence, "negligent spoilation of evidence," and "intentional spoilation of evidence" against each of them. As against Dorchester Mutual, the parents also alleged a violation of G. L. c. 93A and G. L. c. 176D stemming from the same "spoilation of evidence." In support of their negligence claim, the parents alleged that Dorchester Mutual and Splaine were negligent in their "failure to properly preserve and maintain the condition of the subject premises and its components, including the subject electrical circuit and its appurtenant parts when [they] knew or should have known that the condition of said circuit and its appurtenant parts constituted an element vital to the establishment and proof of the cause and origin of the subject fire," and that they had suffered "irreparable harm" as a result. In separate counts for "negligent spoilation of evidence," the plaintiffs alleged that the defendants "knew, or should have known, that said [electrical] circuit was a relevant piece of causative evidence to potential liability claims" and therefore "owed to the Plaintiffs a duty of care to preserve the fire scene and the subject electrical circuit for prospective civil litigation." The removal of the electrical circuit was allegedly a breach of that duty. Finally, in their counts for "intentional spoilation of evidence," the plaintiffs alleged that the defendants breached that same "duty of care to preserve the property" by removing the electrical circuit "with the purpose of harming the Plaintiffs' prospective actions against [the owner] and others" when they "knew or

should have known that harm to the Plaintiffs' prospective claims and lawsuits was substantially certain to follow."

Dorchester Mutual filed a motion to dismiss for failure to state a claim, arguing that Massachusetts does not recognize an action in tort for "spoliation of evidence." The judge agreed, noting that the remedy for spoliation of evidence, if any occurred, would be the imposition of appropriate sanctions in the underlying tort action. See *Kippenhan* v. *Chaulk Servs., Inc.*, 428 Mass. 124, 126-128 (1998); *Nally* v. *Volkswagen of Am., Inc.*, 405 Mass. 191, 197-198 (1989). Thereafter, Splaine filed his own motion to dismiss, which was allowed on the same ground.[8]

2. *Discussion.* To date, we have not recognized a cause of action for spoliation of evidence. Most jurisdictions that have considered the issue have declined to recognize such a cause of action.[9] We adhere to that majority view.

---

[8]Splaine's motion to dismiss raised other grounds as well, which we need not consider in light of our determination that the complaint against him failed to state a claim.

[9]See *Moore* v. *United States*, 864 F. Supp. 163, 164-165 (D. Colo. 1994); *Christian* v. *Kenneth Chandler Constr. Co.*, 658 So. 2d 408, 413-414 (Ala. 1995); *Goff* v. *Harold Ives Trucking Co.*, 342 Ark. 143, 150 (2000); *Temple Community Hosp.* v. *Superior Court*, 20 Cal. 4th 464, 477-478 (1999); *Cedars-Sinai Med. Ctr.* v. *Superior Court*, 18 Cal. 4th 1, 17-18 (1998); *Lucas* v. *Christiana Skating Ctr., Ltd.*, 722 A.2d 1247, 1250-1251 (Del. Super. Ct. 1998); *Owens* v. *American Refuse Sys., Inc.*, 244 Ga. App. 780, 781 (2000); *Gardner* v. *Blackston*, 185 Ga. App. 754, 755 (1988); *Meyn* v. *State*, 594 N.W.2d 31, 34 (Iowa 1999); *Monsanto Co.* v. *Reed*, 950 S.W.2d 811, 815 (Ky. 1997); *Miller* v. *Montgomery County*, 64 Md. App. 202, 214-215 (1985); *Trevino* v. *Ortega*, 969 S.W.2d 950, 952-953 (Tex. 1998); *Austin* v. *Consolidation Coal Co.*, 256 Va. 78, 82-84 (1998). See also *Koplin* v. *Rosel Well Perforators, Inc.*, 241 Kan. 206, 215 (1987) (declining to recognize tort of spoliation "absent some independent tort, contract, agreement, voluntary assumption of duty, or special relationship" of parties); *Guillory* v. *Dillard's Dep't Store, Inc.*, 777 So. 2d 1, 4-5 (La. Ct. App. 2000); *Panich* v. *Iron Wood Prods. Corp.*, 179 Mich. App. 136, 142-143 (1989); *Elias* v. *Lancaster Gen. Hosp.*, 710 A.2d 65, 69 (Pa. Super. Ct. 1998).

Other jurisdictions have declined to reach the question because the facts of the cases before them would fail to make out a spoliation claim, even if such a cause of action were to be recognized. See *Murray* v. *Farmers Ins. Co.*, 118 Idaho 224, 230 (1990); *Federated Mut. Ins. Co.* v. *Litchfield Precision Components, Inc.*, 456 N.W.2d 434, 439 (Minn. 1990); *Baugher* v. *Gates Rubber Co.*, 863 S.W.2d 905, 910 (Mo. Ct. App. 1993). Some courts have refused to impose a general duty to preserve evidence, but have found that the facts as

Our inquiry must begin by determining whether, and in what circumstances, a duty to preserve evidence arises. See *Pirrone* v. *Boston*, 364 Mass. 403, 413 n.13 (1973) ("there need be a remedy only where there is an enforceable duty"). Whether to recognize a duty is a matter of policy, and "the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." *Luoni* v. *Berube*, 431 Mass. 729, 735 (2000), quoting W.L. Prosser & W.P. Keeton, Torts § 53, at 358-359 (5th ed. 1984).

Persons who are not themselves parties to litigation do not have a duty to preserve evidence for use by others. Nonparty witnesses may have evidence relevant to a case — documents, photographs, tape recordings, equipment parts, or any other tangible objects — and may know of its relevance, but that knowledge, by itself, does not give rise to a duty to cooperate with litigants. Automatic imposition of such a duty on all witnesses would interfere with a witness's own property rights. A nonparty witness is not required to preserve and store an item merely because that item may be of use to others in pending or anticipated litigation.

While a duty to preserve evidence does not arise automatically from a nonparty's mere knowledge, there are ways that that duty may be imposed on a nonparty. Witnesses may be required to produce particular items by way of a subpoena

pleaded fit within a narrower cause of action already acknowledged within the jurisdiction. See *Smith* v. *Atkinson*, 771 So. 2d 429, 433 (Ala. 2000) (assumption of duty); *La Raia* v. *Superior Court*, 150 Ariz. 118, 121 (1986) (duty to mitigate harm of underlying tort); *Boyd* v. *Travelers Ins. Co.*, 166 Ill. 2d 188, 194-195 (1995) (assumption of duty); *Rosenblit* v. *Zimmerman*, 166 N.J. 391, 405-406 (2001) (fraudulent concealment); *Weigl* v. *Quincy Specialties Co.*, 158 Misc. 2d 753, 757 (N.Y. Sup. Ct. 1993) (unlawful interference with employee's right to pursue workers' compensation claim). See also *Thompson* v. *Owensby*, 704 N.E.2d 134, 138 (Ind. Ct. App. 1998) (negligent spoliation claim recognized where facts gave rise to special duty).

Only a handful of jurisdictions has expressly recognized a cause of action for spoliation of evidence. See *Hazen* v. *Anchorage*, 718 P.2d 456, 463 (Alaska 1986); *Bondu* v. *Gurvich*, 473 So. 2d 1307, 1312 (Fla. Dist. Ct. App. 1984); *Oliver* v. *Stimson Lumber Co.*, 297 Mont. 336, 348-352 (1999); *Torres* v. *El Paso Elec. Co.*, 127 N.M. 729, 745 (1999); *Smith* v. *Howard Johnson Co.*, 67 Ohio St. 3d 28, 29 (1993). But see *Nichols* v. *State Farm Fire & Cas. Co.*, 6 P.3d 300, 304 (Alaska 2000) (narrowing scope of permissible spoliation claims); *White* v. *Ford Motor Co.*, 142 Ohio App. 3d 384, 388 (2001) (same).

duces tecum, as long as the item is still in the witness's possession, custody, or control at the time the subpoena is served.[10] See Mass. R. Civ. P. 45 (b), 365 Mass. 809 (1974); *Commonwealth* v. *Kreplick*, 379 Mass. 494, 497 (1980) ("a person cannot be compelled to produce, under a subpoena, a document which is neither in his possession nor under his control"); *Finance Comm'n of Boston* v. *McGrath*, 343 Mass. 754, 766 (1962) ("subpoena cannot require [witness] to produce documents not now within his possession or reasonable control"). The witness may not destroy the item after having been served with the subpoena, but, by definition, anything already destroyed prior to service is no longer within the witness's possession, custody, or control. Thus, the duty imposed by a subpoena attaches at the time the subpoena is served, not before. That duty is then enforced as needed by appropriate court orders, up to and including holding the witness in contempt. See Mass. R. Civ. P. 45 (f), 365 Mass. 809 (1974). The duty placed on nonparties is one imposed by the rules governing subpoenas, and a violation of that duty has its own remedy under those same rules. There is no need to invent a cause of action to enforce a duty when the rules that created the duty in the first place already provide their own remedies.

A third-party witness may also agree to preserve an item of evidence and thereby enter into an enforceable contract. See *Koplin* v. *Rosel Well Perforators, Inc.*, 241 Kan. 206, 208, 215 (1987) (declining to recognize cause of action for spoliation, but recognizing that duty to preserve evidence may be imposed "by reason of an agreement, contract, statute, or other special circumstance"). Remedies for breach of such an agreement are found in contract law, not in tort law. Again, where the source of a nonparty's duty to preserve evidence is one that already states a cause of action and provides its own remedies, we will not invent a separate, duplicate cause of action in tort.

We have implicitly recognized that persons who are actually involved in litigation (or know that they will likely be involved)

---

[10]The rule allows a witness for whom such production would be unreasonably burdensome to move to quash the subpoena, thereby avoiding any such duty in cases where it would be unreasonable or oppressive to impose it. See Mass. R. Civ. P. 45 (b) (1), 365 Mass. 809 (1974).

have a duty to preserve evidence for use by others who will also be involved in that litigation. Where evidence has been destroyed or altered by persons who are parties to the litigation, or by persons affiliated with a party (in particular, their expert witnesses), and another party's ability to prosecute or defend the claim has been prejudiced as a result, we have held that a judge may exclude evidence to remedy that unfairness. See *Kippenhan* v. *Chaulk Servs., Inc.,* 428 Mass. 124, 126-128 (1998); *Nally* v. *Volkswagen of Am., Inc.,* 405 Mass. 191, 197-198 (1989). See also *Bolton* v. *Massachusetts Bay Transp. Auth.,* 32 Mass. App. Ct. 654, 656-657 (1992). In doing so, we have gone farther than other jurisdictions, many of which address spoliation merely by permitting an adverse inference against the party responsible for the spoliation. See *Kippenhan* v. *Chaulk Servs., Inc., supra* at 128, citing *Beers* v. *Bayliner Marine Corp.,* 236 Conn. 769, 775 (1996). Thus, once "a litigant or its expert knows or reasonably should know that the evidence might be relevant to a possible action," we have imposed a duty to preserve such evidence in the interests of fairness. *Kippenhan* v. *Chaulk Servs., Inc., supra* at 127.

Again, however, in recognizing such a duty, we simultaneously crafted the remedy for spoliation within the context of the underlying civil action. Sanctions in that action are addressed to the precise unfairness that would otherwise result. Thus, for example, an expert's testimony (or portions thereof) may be excluded so that the expert would not have the unfair advantage of posing as "the only expert with first-hand knowledge" of the item. *Nally* v. *Volkswagen of Am., Inc., supra* at 198. Such a sanction "should go no further than to preclude tainted testimony." *Id.* at 199. The imposition of such a remedy must also take into account the party responsible for the spoliation. See *Kippenhan* v. *Chaulk Servs., Inc., supra* at 128 (defendant's spoliation of evidence did not preclude plaintiff's expert from testifying against codefendant). Not only do we impose the sanction of excluding testimony, but we do so recognizing that such exclusion of testimony may be dispositive of the ultimate merits of the case, thereby imposing the ultimate sanction on the party responsible for the spoliation. See *Nally* v. *Volkswagen of Am., Inc., supra* at 195, 199 (summary judgment

for defendant may be appropriate if exclusion of expert testimony prevents plaintiff from making out prima facie case). Of course, if spoliation occurs in violation of a discovery order, various sanctions, including dismissal or judgment by default, may be imposed for that violation. See Mass. R. Civ. P. 37 (b) (2), 365 Mass. 797 (1974).

Thus, consistent with the specific facts and circumstances of the underlying case, sanctions for spoliation are carefully tailored to remedy the precise unfairness occasioned by that spoliation. A party's claim of prejudice stemming from spoliation is addressed within the context of the action that was allegedly affected by that spoliation. And, if the party claiming prejudice is of the view that the judge erred in refusing to impose sanctions, or in not ordering sufficiently extensive sanctions, that issue may be raised on appeal. As such, the remedies to which a victim of spoliation is entitled will be conclusively determined in the underlying action.

Finally, along with other jurisdictions, we are persuaded that allowing a separate cause of action for spoliation would recognize a claim that, by definition, could not be proved without resort to multiple levels of speculation. See, e.g., *Goff* v. *Harold Ives Trucking Co.*, 342 Ark. 143, 149 (2000); *Cedars-Sinai Med. Ctr.* v. *Superior Court*, 18 Cal. 4th 1, 17-18 (1998). A plaintiff pursuing a spoliation action would have to prove that the breach of the duty to preserve evidence caused damage to the plaintiff's position in the underlying case, and would have to prove the amount of those damages. To establish causation and damages, the plaintiff would have to show that the jury in the underlying action would have found differently if the original, unaltered item of evidence had been before them. Such a showing requires proof of the very thing that can no longer be proved: the precise nature of the original item. If the contents or salient characteristics of the original item can still be shown, then they can be shown in the underlying action and there is no damage from any "spoliation." If they cannot be shown, then the jury in the spoliation action could only surmise whether the item in its original state would in fact have been favorable to the party now claiming to have suffered a loss on account of

that spoliation.[11] And, it would be the utmost of surmise and speculation for the jury to decide what persuasive effect that item, if still available in its original state, would have had on the jury in the underlying action. Ultimately, such claims are inherently circular, calling on one jury to revisit what another jury have already decided and to determine whether something that still cannot be shown would, had it been available, have changed that original jury's opinion.

The experience of the California courts is instructive in this regard. It was a California intermediate appeals court that first recognized a cause of action for spoliation of evidence in 1984. See *Smith* v. *Superior Court*, 151 Cal. App. 3d 491, 502 (1984). Overruling that decision fourteen years later, California's highest court determined that the speculative nature of a cause of action for spoliation would make such a claim virtually impossible to prove:

> "[I]n a substantial proportion of spoliation cases the fact of harm will be irreducibly uncertain. In such cases, even if the jury infers from the act of spoliation that the spoliated evidence was somehow unfavorable to the spoliator, there will typically be no way of telling what precisely the evidence would have shown and how much it would have weighed in the spoliation victim's favor. Without knowing the content and weight of the spoliated evidence, it would be impossible for the jury to meaningfully assess what role the missing evidence would have played in the determination of the underlying action. The jury could only speculate as to what the nature of the spoliated evidenced was and what effect it might have had on the outcome of the underlying litigation."

*Cedars-Sinai Med. Ctr.* v. *Superior Court, supra* at 13-14. We agree that it is inappropriate to "open[] up the decision on the merits of the underlying causes of action to speculative reconsideration regarding how the presence of the spoliated evidence might have changed the outcome." *Id.* at 17.

[11]Here, for example, if some relevant feature of the electrical components was destroyed by Splaine, the codefendant electrical contractor could claim that he, not the plaintiffs, is the party prejudiced by the spoliation, on the theory that the original components would have demonstrated that there was no defect in the way they were installed.

The destruction of relevant evidence "is an unqualified wrong," *id.*, that has a pernicious effect on the truth-finding function of our courts. See Nesson, Incentives to Spoliate Evidence in Civil Litigation: The Need for Vigorous Judicial Action, 13 Cardozo L. Rev. 793, 794-805 (1991). It is for that very reason that we have gone farther than other jurisdictions in imposing sanctions for spoliation. See *Kippenhan* v. *Chaulk Servs., Inc., supra* at 128. In our view, appropriately tailored sanctions imposed in the underlying action are a more efficacious remedy for spoliation than allowing a separate, inherently speculative cause of action for such litigation misconduct.

Accordingly, we affirm the dismissal of plaintiffs' claims for spoliation, and leave the plaintiffs to pursue their remedies for the alleged spoliation in the underlying tort actions.

*Judgment affirmed.*