**Not for Publication in West's Federal Reporter
Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 02-1849

ELAINA MALINOWSKI, Individually, and as Administratrix
of the Estate of Michael Malinowski, a/k/a Michael Anthony
Chafee-Malinowski,
Plaintiff, Appellant,

v.

DOCUMENTED VEHICLE/DRIVERS SYSTEMS, INC.,
a/k/a DVD SYSTEMS, INC., UNITED PARCEL SERVICE.,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lynch, Circuit Judge,
Campbell, Senior Circuit Judge,
and Howard, Circuit Judge.

Ronald J. Resmini, Jolicoeur & Resmini Co., Inc., Resmini &
O'Hare and Robert D. Parrillo on brief for appellant.
Edward L. Gnys and Armstrong, Gibbons & Gnys, LLP on brief for
appellee, Documented Vehicle/Drivers Systems, Inc.
George A. Dagon, Jr., Murtha Cullina LLP, Lori Caron Silveira,
Tillinghast Licht Perkins Smith & Cohen, LLP on brief for appellee,
United Parcel Service, Inc.

May 30, 2003

**Per Curiam**.  The Appellant, Elaina Malinowski, appeals from the district court's order granting summary judgment to Appellees, United Parcel Service, Inc. ("UPS") and Documented Vehicle/Drivers Systems, Inc. ("DVD").  Ms. Malinowski argues that the district court erred when it ruled that the Rhode Island Supreme Court would not recognize an independent tort for spoliation of evidence and that it further erred in concluding that, even supposing it did recognize such a cause of action, she failed to meet the essential elements.  We find it unnecessary to rule on the first ground and affirm on the second ground.

I.       BACKGROUND

On December 27, 1991, fourteen year old Michael Malinowski was struck and killed by a UPS tractor trailer operated by Stephen Hogan.  The accident occurred as Michael and three friends were walking along Taunton Avenue in East Providence, engaged in horseplay, jumping and shoving each other.  As the UPS truck approached the four boys, Michael was pushed by one of his friends.  He lost his balance and fell into the road just as the UPS truck passed.

The accident was investigated by the State Police and by UPS.  After the State Police had completed their inspection of the truck, a UPS supervisor, James Kershaw, removed a "tachograph disc" from the vehicle.  Such a disc, consisting of a round coated paper chart, tells the movement and speed of the vehicle as recorded on

-2-

a tachograph located in the cab of the truck. UPS sent the tachograph disc to DVD in California for an independent analysis. On January 6, 1992, DVD issued a report and returned the disc to UPS. The DVD report stated that the tachograph disc "has not been properly cared for," but that the information was readable. According to DVD, the tachograph disc indicated a speed of about 33 miles per hour at the time of the accident. But the report also noted a number of discrepancies in the data, as well as a "mechanical error in the recording device," and concluded that the disc was of "very little value" in determining Hogan's actual speed at the time of the accident. Upon receipt of the report, UPS placed the tachograph disc and the report in an Accident Folder.

Apart from obtaining the DVD report, UPS performed independent tests on the truck, specifically a veeder test. A veeder test uses a meter installed in the transmission to check the accuracy of the speedometer/odometer, by driving the vehicle a measured distance. The veeder test indicated that the tachograph in the vehicle was inaccurate by 26 percent, which, according to UPS, meant that the tachograph was recording speeds 26 percent higher than the actual speed of the vehicle.

On September 27, 1993, Ms. Malinowski, individually and as administratrix of the estate of Michael, brought a wrongful death action in the Rhode Island state court against Stephen Hogan and UPS. Ms. Malinowski alleged that Hogan, who had conceded

-3-

seeing the boys at the side of the road, was negligent and was driving too fast as he approached the boys. At the start of the trial, in May 1997, Ms. Malinowski obtained the tachograph disc and DVD report from UPS. The disc was discolored but readable. The trial judge, with some hesitation, admitted the tachograph disc as an exhibit. Neither party sought to introduce the DVD report. Over defense objections, the court allowed Ms. Malinowski's counsel to elicit testimony regarding the speed reading on the disc. Kershaw, the UPS supervisor, testified that the disc showed a speed of 32-33 miles per hour at the time of the accident. The speed reading was in direct contradiction to Hogan's testimony that he was traveling approximately 20 miles per hour at the time of the accident. Kershaw also testified that the tachograph disc showed "continuous" or "progressive" acceleration of the vehicle up to the time of the accident. This testimony also contradicted Hogan's report that he honked and decelerated when he saw the boys and then accelerated when it appeared that they had stopped their horseplay. In response, UPS's counsel had Kershaw testify to the veeder test, explaining how the veeder test had established that the tachograph speed readings were inaccurate.

On May 21, 1997, the jury returned a verdict for the defendants. The plaintiff appealed and, in May 1999, the Rhode Island Supreme Court vacated the judgment and remanded based upon errors in the jury instructions not relevant here. See Malinowski

-4-

v. <u>United Parcel Serv., Inc.</u>, 727 A.2d 194 (R.I. 1999). Neither side appealed from the court's rulings admitting into evidence the tachograph disc and the veeder test, and the Rhode Island Supreme Court's opinion does not mention these rulings.

In October 1999, the case was assigned for a second trial before a different judge. At the second trial, UPS challenged the admissibility of the tachograph disc. UPS argued that the plaintiff had not produced an expert to establish the accuracy of the tachograph, and that the available evidence was that the tachograph was not accurate. The trial judge heard testimony, outside the presence of the jury, regarding the accuracy of the tachograph. Kershaw testified to the UPS records of repairs to Hogan's vehicle, which showed that what he termed the speed gear had been inaccurate for two months prior to the accident and that replacement parts had been ordered but were not installed until after the accident. Hogan testified that he had been aware of a problem with the speedometer in his vehicle before the accident. As a result, the trial judge concluded that the speed readings from the tachograph should be excluded. The court ruled that the evidence provided by the tachograph was scientific evidence and that the plaintiff had not established a foundation regarding the accuracy of that evidence as it related to the speed of the truck.[1]

---

[1]Specifically, the court stated:

For the tachograph readings as to speed to be admissible,

-5-

However, because neither party contested the accuracy of the reading regarding the deceleration and acceleration of the vehicle, testimony regarding that reading was to be allowed.

Thus, the second jury was not allowed to hear the tachograph readings giving the vehicle's purported speed. The jury in the second trial did, however, hear Kershaw testify that the line on the tachograph chart indicated "continuous" or "progressive" acceleration as the vehicle approached the point of the accident.

At the end of the second trial, Ms. Malinowski's counsel submitted a proposed jury instruction based on a Rhode Island evidentiary rule that permits an adverse inference for the unexplained, deliberate destruction or mutilation of relevant evidence. See Rhode Island v. Barnes, 777 A.2d 140, 145 (R.I. 2001) (describing the "doctrine of spoliation"). The court declined to give a jury charge on spoliation. The court observed that the tachograph was in evidence and that the plaintiff had failed to identify "what evidence was the subject of an argument regarding spoliation." On October 8, 1999, the jury returned a verdict for the defense.

---

there must be evidence that the tachograph was in good working order and accurate at the time the recording of speed was made. Absent an appropriate foundation as to the accuracy of the tachograph speed reading, the evidence as to the speed cannot be deemed relevant scientific evidence to be placed before the jury.

-6-

Ms. Malinowski filed numerous post-trial motions, including motions seeking a new trial. The motions for a new trial were based upon two theories: a contention that the court erred in excluding the tachograph speed reading, and a claim of "newly discovered" evidence. In support of these motions, Ms. Malinowski submitted unsworn reports from two people averring to be experts in tachograph analysis. Both individuals commented on the discolored nature of the tachograph disc, one citing its "deplorable condition" and the other his difficulty in reading it. Ms. Malinowski cited these comments as evidence that either UPS or DVD had tampered with the disc. However, both individuals went on to report data they had obtained from the disc and they did not suggest that the condition of the disc had prevented them from reading it. Indeed, except for a ten and a half mile error on the speed stylus, one expert expressly found no evidence of error, and neither of them noted any problem understanding and analyzing the disc notwithstanding its poor condition.

Mr. Resmini, Ms. Malinowski's counsel, also submitted an affidavit in which he stated that he had just "discovered" that DVD was still in existence. Based on a comment by a UPS employee during the first trial, Mr. Resmini had believed that DVD had gone out of business and, as a result, he had not sought to investigate

DVD's involvement.[2]  Mr. Resmini also averred that he had spoken by phone with the current owner of DVD, Mr. Wilson, and that Mr. Wilson had informed him that the tachograph disc was in extremely poor condition.  Mr. Wilson, however, declined to submit an affidavit averring to the condition of the disc or offer an opinion regarding its accuracy.

The trial court denied each of the post-trial motions. The court expressly rejected Ms. Malinowski's argument that any alleged mishandling of the tachograph disc by UPS had prevented Malinowski from laying the foundation for admissibility of the speed reading.  With regard to the motion for new trial, the court first observed that Mr. Resmini's affidavit was inadmissible hearsay.  Second, the court noted that even if deemed admissible, the information in the affidavit could have been discovered prior to trial.[3]  Third, the court held that, even if considered new

---

[2]Mr. Resmini suggests that UPS attempted to prevent Ms. Malinowski from contacting DVD by misrepresenting under oath that DVD was no longer in existence.  During the first trial, Mr. Resmini asked a UPS employee whether DVD was still in existence. The employee responded:  "No, they are not.  I really can't answer that.  We did try to contact them but -- ."  The testimony at issue is not a definitive statement of whether DVD remained in business nor does it explain why Mr. Resmini waited until after the second trial to obtain independent verification of DVD's existence.

[3]On this point, the court seemed somewhat perplexed by the lack of effort on Ms. Malinowski's part to diligently develop the evidence necessary to support her claims.  The court observed:

The absence of diligence on the expert front by plaintiff is remarkable.  There was an obvious lack of diligence

-8-

evidence, the information probably would not have affected the outcome of trial. The court concluded that "[t]he evidence of actual speed is far less relevant than the evidence of acceleration or the other evidence of what actions Mr. Hogan did or did not take . . . . I am not convinced that the introduction of evidence as to speed would have altered the jury's verdict in this case . . . ."[4]

Ms. Malinowski appealed, contending that the lower court erred in refusing to admit the tachograph speed reading in evidence, in declining to charge the jury on spoliation, and in denying the post-trial motions. The Rhode Island Supreme Court

---

pertaining to the tachograph that predates even the first trial. There was no effort made by plaintiff [in discovery] to request the tachograph or records bearing on speed (which would have included the DVD report prior to the first trial . . . .). When the plaintiff finally learned about the tachograph and the defendant's expert report by DVD during the first trial in 1997 (which was six years post accident) no apparent effort was made from that point until after the second trial in 1999 to have the tachograph examined or to depose anyone at DVD . . . .

[4]The court had made a similar observation earlier in the hearing.

[E]ven assuming, arguendo, that the evidence as to speed, as registered on the tachograph, should have been admitted, this Court is not convinced that it would have altered the result of this case. After all, the jury in the first trial heard this evidence and reached the same conclusion as the second jury, albeit with different jury instructions . . . . More importantly, the more critical evidence as to speed was not so much the actual speed of the truck but the evidence of continued acceleration (which this Court allowed).

affirmed the rulings of the lower court, concluding that each of the rulings was an appropriate exercise of discretion. See Malinowski v. United Parcel Serv., Inc.(Malinowski II), 792 A.2d 50 (R.I. 2002). The court opined that "the jury heard the most compelling information revealed by the tachograph -- that Hogan had failed to decelerate upon seeing [the boys] . . . ." Id. at 54. The court further recognized that "speed may not have been a factor in this accident because it is undisputed that Michael was struck by the rear wheels of the truck . . . ." Id.

Following the dismissal of her appeal in the wrongful death action, Ms. Malinowski brought this independent tort action in the Rhode Island state court claiming that the condition of the tachograph disc was the cause of her inability to obtain a favorable jury verdict in the wrongful death action. According to Ms. Malinowski, had the tachograph not been "destroyed" it would have shown that Hogan was traveling at an excess speed at the time of the accident and that he failed to slow down when he observed the boys in horseplay -- in direct contradiction to Hogan's own testimony. DVD and UPS removed the action to federal court.

DVD and UPS immediately filed motions for summary judgment, arguing, inter alia, that Rhode Island did not recognize a separate and independent tort for spoliation. Magistrate Judge Lovegreen granted summary judgment to UPS and DVD. In a thorough report and recommendation, he noted that the Rhode Island Supreme

Court had not recognized a separate and independent tort of spoliation, and went on to hold that it was unlikely Rhode Island would do so given the problems such a tort would create and the fact that a majority of "the states' highest courts considering this issue have declined to adopt a separate and independent cause of action for spoliation of evidence." Malinowski v. United Parcel Serv., Inc., C.A. 01-273ML, report and recommendation, at 9 (D.R.I. May 10, 2002). The magistrate judge further held that even if Rhode Island recognized such a tort, Ms. Malinowski had failed to adduce evidence that would establish its elements in her own case. Id. at 20. Hence, she had not shown that the disc's discoloration and poor condition were the cause of her inability to have obtained a favorable jury verdict. Id. at 21. The magistrate judge noted that although the independent experts that Ms. Malinowski had retained to review the tachograph disc after the second trial had commented on its poor condition, they were still able to read and analyze the contents of the disc. The disc had not been destroyed, mutilated or significantly altered as would be required to make out a spoliation tort. Moreover, in the absence of evidence of why the disc was in poor condition there was insufficient proof that defendants had intended to damage the disc.

Ms. Malinowski objected to the report and recommendation of the magistrate judge. The district court agreed with the magistrate judge's conclusion that Rhode Island would not recognize

-11-

an independent tort for the spoliation of evidence. <u>Malinowski</u> v.
<u>United Parcel Serv., Inc.</u>, No. 01-273ML, slip op. at 1 (D.R.I. June
17, 2002). The district court went on to conclude that even if the
tort were available, the Rhode Island Supreme Court's decision in
<u>Malinowski II</u> regarding the lack of materiality of the alleged
"newly discovered" evidence of spoliation eliminated an essential
element of such a tort claim. <u>Id.</u> at 2. The district court
entered judgment as a matter of law in favor of the defendants.

This appeal followed.

## II. DISCUSSION

This court reviews grants of summary judgment de novo,
construing the record in the light most favorable to the nonmovant
and resolving all reasonable inferences in that party's favor.
<u>Rochester Ford Sales, Inc.</u> v. <u>Ford Motor Co.</u>, 287 F.3d 32, 37 (1st
Cir. 2002). In opposing summary judgment, the nonmoving party "may
not rest upon the mere allegations or denials of [the] pleading,
but must set forth specific facts showing that there is a genuine
issue" of material fact as to each issue upon which he or she would
bear the ultimate burden of proof at trial. <u>Anderson</u> v. <u>Liberty
Lobby, Inc.</u>, 477 U.S. 242, 256 (1986) (internal quotations,
citation, and alteration omitted). This standard of review does
not limit us to the district court's rationale; we may affirm the
entry of summary judgment on "any ground revealed by the record."

-12-

Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).

Neither the Rhode Island legislature nor the Rhode Island Supreme Court has yet established or recognized the existence of an independent tort for the spoliation of evidence. While both the magistrate judge and the district court judge concluded that the Rhode Island Supreme Court would not create such a tort, we see no need to delve into the unchartered waters of Rhode Island law and endeavor to prophesize whether the Rhode Island Supreme Court would adopt an independent tort for spoliation of evidence. Compare, e.g., Fletcher v. Dorchester Mut. Ins. Co., 773 N.E.2d 420, 426 (Mass. 2002) (declining to recognize an independent tort for spoliation of evidence) with Torres v. El Paso Elec. Co., 987 P.2d 386, 404 (N.M. 1999) (recognizing a tort for the intentional spoliation of evidence).

We agree with the magistrate judge and the district court that, even supposing the Rhode Island Supreme Court were to recognize a spoliation tort, Ms. Malinowski has not set forth specific facts making out such a hypothetical cause of action in her case. Perhaps most telling is the absence of a factual basis from which to conclude that DVD or UPS destroyed evidence so as to affect her ability to obtain a favorable judgment in the wrongful death action. While Ms. Malinowski's counsel argues that, from the date of the accident, UPS, along with DVD, conspired to destroy and

did destroy evidence related to the speed of the vehicle and further, that the evidence related to speed was critical to the outcome of the trial, the allegations lack material support in the record. In the few states that recognize an independent tort for spoliation of evidence, courts have required, inter alia, that a party show a causal relationship between the act of spoliation and the inability of the complainant to prove her lawsuit. See, e.g., Oliver v. Stimson Lumber Co., 993 P.2d 11 (Mont. 1999); Torres v. El Paso Elec. Co., 987 P.2d 386, 401 (N. Mex. 1999).

To support her spoliation claim, Ms. Malinowski relies heavily on the discoloration of the tachograph disc and other evidence that the disc was in poor condition. According to Ms. Malinowski, "[t]he tachograph was willfully destroyed" by either UPS or DVD and, as a result, she "was unable to prove her case in state court."

However, there is nothing to show that the poor condition of the disc affected its accuracy or readability so as to compromise its use at trial. To be sure, there was a dispute over whether the speed reading rendered by the tachograph was too high because of some mechanical malfunction. During the first trial, the tachograph disc was admitted without limitation to show both the vehicle's speed and rate of acceleration at the time of the accident. While the disc was admittedly in a "darkened condition," this did not prevent Ms. Malinowski's counsel from eliciting the

favorable testimony desired from a UPS supervisor showing the disc's reading as to the speed of the vehicle at the time of the accident, as well as its acceleration. UPS was allowed to counter the evidence with testimony that the readings were not accurate because of problems with the vehicle's speed gear that had preceded the accident -- problems bearing no apparent relation to the subsequent readability of the disc or to the claim of post-accident spoliation of evidence. In the second trial, Ms. Malinowski's counsel again tried to introduce the disc as evidence of the vehicle's excessive speed. After UPS had objected and had presented evidence of mechanical error preceding the accident, the trial judge disallowed the use of the tachograph disc as it related to the speed of the vehicle, finding that Ms. Malinowski had failed to lay a sufficient foundation showing the accuracy of the speed reading. But the trial judge admitted the tachograph disc for the limited purpose of showing the vehicle's acceleration and deceleration patterns. The court's exclusion of the disc's reading as to speed was not linked to the discoloration or poor condition of the disc itself.

The reports from Ms. Malinowski's experts in tachograph analysis, Mr. Robert Blancarte and Dr. Nigel Kirkwood, further weaken Ms. Malinowski's assertion that the condition of the disc prevented her from obtaining a favorable jury verdict. While both Mr. Blancarte and Dr. Kirkwood noted the poor condition of the

disc, each was apparently able to read and analyze the information on the disc. Indeed, they challenged DVD's report that the speed shown on the disc was inaccurate, instead defending the accuracy of the information obtained from the disc. Mr. Blancarte stated that the DVD report "in no way established any error with the vehicle and the chart speeds." Rather than suggest that the disc was irreparably damaged, both reports tend to support the proposition that the disc was readable and should have been accepted in evidence at the second trial, as it was at the first trial, to show the driver's true speed. That position is inconsistent with the view that the disc had been so destroyed, mutilated or altered by defendants as to render it defective as trial evidence.

We note further that the Rhode Island courts believed it unlikely the exclusion of the speed evidence at the second trial influenced the outcome. The Rhode Island Supreme Court upheld the trial judge's decision to exclude the portions of the tachograph disc related to speed in the absence of an expert opinion regarding its accuracy. The court went on to state:

> Further, the jury heard the most compelling information revealed by the tachograph -- that Hogan had failed to decelerate upon seeing Michael and his friends, and in fact, had accelerated continuously from the previous traffic signal. Finally, speed may not have been a factor in this accident because it was undisputed that Michael was struck by the rear wheels of the truck and after the accident he was lying approximately fifty-three feet from the rear of the trailer.

<u>Malinowski II</u>, 792 A.2d at 54. This determination was echoed again by the court when it concluded that the "newly discovered" evidence regarding the potential spoliation of the tachograph disc "was not material enough to affect the outcome of the trial."

**III.     CONCLUSION**

Even were the Rhode Island Supreme Court to recognize an independent tort for the spoliation of evidence, Ms. Malinowski has failed to demonstrate her ability to establish all the essential elements. The order of the district court granting summary judgment to DVD and UPS is **<u>affirmed</u>**.