Gardner, J.
The plaintiff, Brenda A. Usher (“Usher”), sued the defendant, Otis Elevator Company, Inc. (“Otis Elevator”), for personal injuries allegedly caused by its negligent maintenance of a freight elevator in a building in Worcester. Summary judgment entered for Otis Elevator. Usher has appealed.
Taken in the light most favorable to Usher, the nonmoving party, Pellegrino v. Springfield Parking Auth., 69 Mass. App. Ct. 94, 97 (2007), the Mass. R. Civ. P., Rule 56, materials disclose the following. Massachusetts Electric Company (“Mass. Electric”) contracted with Otis Elevator to maintain its freight elevator in a building it owned in Worcester. The contract term was from January 1,2003 to December 31, 2005. The freight elevator was the only elevator in the building. Usher, an employee of Mass. Electric, stated in her deposition that “everyone” used this elevator, and that she had never been told not to use it. She further testified that she used it approximately ten times a week over the course of a year.
In April, 2004, the elevator was equipped with a vertical bi-parting door that closed automatically. Usher stated in her deposition that, based on her observations, the elevator would buzz to signal that the doors were closing, but that for at least a week prior to her accident, “it buzzed all the time,” whether the doors closed or not. On April 8, Usher exited the first-floor cafeteria and proceeded to the elevator. Despite the buzzing sound, she entered the elevator and was struck in the head by the descending overhead door, injuring her.
Within days of Usher’s accident, Otis Elevator, at the behest of Mass. Electric, changed the elevator doors from automatically operated to manually closing doors.
Usher subsequently brought this negligence action against Otis Elevator in June, 2005, claiming that it had “negligently and carelessly permitted the elevator to become and remain in an unsafe and dangerous condition, and maintained the same improperly and dangerously, all of which [Otis Elevator] had due notice or by reasonable inspection thereof might and should have had due notice.” Otis Elevator moved for summary judgment on the grounds that Usher had no reasonable expec *95 tation of proving that Otis Elevator had committed breach or had notice of a defect in the doors. Usher opposed the motion and also requested that the trial court direct a verdict in her favor as a sanction for Otis Elevator’s spoliation of evidence. After a hearing, the trial court granted summary judgment to Otis Elevator and denied Usher’s request for sanctions. This appeal followed.
1. Usher argues that whether Otis Elevator had notice of the alleged defect in the elevator was a disputed question of material fact.[2] We disagree.
“Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.” Glidden v. Maglio, 430 Mass. 694, 696 (2000). “A moving party may satisfy his burden by demonstrating that proof of an essential element of the plaintiff’s case is unlikely to be forthcoming at trial.” Id., citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). "Vague or general allegations of expected proof are insufficient to defeat summary judgment.” Clarke v. Mal Elfman’s Furniture Store, 2005 Mass. App. Div. 160, 161.
To prevail on her negligence claim, Usher had the “burden of showing that [Otis Elevator] knew or in the exercise of reasonable care should have known of the defect sufficiently in advance of the accident to have remedied it.” Bernstein v. Highland Assocs. of Worcester, Inc., 1 Mass. App. Ct. 132, 134 (1973). See also Weldon v. Otis Elevator Co., 1998 Mass. App. Div. 19, 20; Arroyo v. Otis Elevator, 1996 Mass. App. Div. 7, 8. None of the summary judgment materials, however, include any showing by Usher that Otis Elevator knew or should have known of the defect. In her answers to interrogatories, when asked to describe the facts on which she bases her negligence claim, Usher states merely that, as she was entering the elevator on April 8, “the elevator door came down on my head.” In deposition testimony, although she notes that the elevator had been buzzing, whether it closed or not, for at least a week before her accident, she fails to specify whether Otis Elevator knew or was put on notice of that buzzing, or that the buzzing was even a defect.
Further, Usher attached to her opposition motion the deposition of William Aickey (“Aickey”), a maintenance supervisor at Otis Elevator who oversaw the Worcester area, as well as a series of maintenance records for the elevator in question kept by the defendant. The records show that Otis Elevator, from December, 2003 to September, 2004, received eight customer complaints regarding the operation of the doors. Many of the complaints state merely that the doors have failed to open or, more generally, have been operating improperly or “recycling.” Besides the incident on April 8, only the report generated on December 17,2003 includes a com *96 plaint that the doors have been closing on passengers. The Otis Elevator employee who responded to the complaint indicated on the report that he checked the operation of the elevator. He left no followup notes, however. According to Aickey, this meant that the employee found nothing wrong with the elevator. As to the report generated for April 8, 2004, this too indicates only that Otis Elevator checked the operation. According to Aickey, “it’s a similar call with the same result.”
Finally, the records show that Otis Elevator inspected the elevator on March 24, 2004, less than two weeks before Usher’s accident. Aickey testified that such an inspection would entail “[t]he mechanic... rid[ing] the elevator, be[ing] sure it was operating properly, check [ing] the machine room, be[ing] sure everything up there was functioning the way it should be.” The report generated for March 24 does not disclose that any problems were discovered or any repairs made.
Given the absence of any indication that Otis Elevator knew or should have known of the alleged defect in the elevator doors, the trial court properly granted summary judgment to Otis Elevator.
2. Usher argues, separately, that the trial court abused its discretion in declining to direct a verdict in her favor as a sanction for Otis Elevator’s spoliation of evidence. Again, we disagree.
“Persons who are not themselves parties to litigation do not have a duty to preserve evidence for use by others,” Fletcher v. Dorchester Mut. Ins. Co., 437 Mass. 544, 548, unless the duty is imposed by subpoena duces tecum or by contract. Id. at 548-549. Here, it is undisputed that Mass. Electric, a nonparty, directed Otis Elevator to install manually closing doors days after Usher’s accident, and that Usher neither contracted with Mass. Electric, nor served it with a subpoena duces tecum.
Further, the Supreme Judicial Court in Fletcher implied that a parly’s duty to preserve evidence extends only to that evidence within its control. Id. In this case, the maintenance contract between Mass. Electric and Otis Elevator provides, “It is agreed that we do not assume possession or control of the Units, that such Units remain yours solely as owner....” Because Otis Elevator had no control over the elevator, it cannot be held responsible for its alteration in the wake of Usher’s accident.
Judgment affirmed.
So ordered.

 In her memorandum in opposition to Otis Elevator’s motion for summary judgment, and in her appellate brief to this Division, Usher limited her argument against summary judgment to the existence of a genuine dispute of material fact as to notice. Our consideration of Usher’s appeal of the grant of summary judgment is limited to that issue. Dist./Mun. Cts. R. A. D. A., Rule 16(a)(4). See also MCS Enters., Ltd. v. Henry, 2006 Mass. App. Div. 47, 48.