Sanders, Janet L., J.
This case is the latest chapter in a long-running dispute between the parties concerning management fees and ownership interests in certain hedge funds operated by the defendants. After prevailing in an arbitration,[2] plaintiffs brought this action, contending that defendants had engaged in fraudulent and otherwise wrongful conduct intended to deprive them of obtaining the benefit of that arbitration award. Plaintiffs now contend that the defen *474 dants have intentionally destroyed evidence and seek sanctions, including default judgment. Although this Court concludes that default is too harsh a remedy, some sanctions are nevertheless appropriate. Accordingly, the plaintiffs’ Motion for Sanctions for Spoliation is ALLOWED, for reasons set forth below.
BACKGROUND
Many of the facts relating to the instant motion are undisputed. This case was filed in March 2010. Pursuant to a scheduling order of this Court (Lauriat, J.) the parties were to complete document discovery by May 1,2011, with other fact discovery to be completed by September 30, 2011. In order to respond to the document requests, defendants and their prior counsel, McDermott Will & Emory, retained Evidox Corporation, a Boston-based firm providing e-discovery services. From August 2010 through the spring of 2011, Evidox collected, processed, and searched a large volume of electronic files made available to it by defendants. In the meantime, defense counsel advised his clients both in writing and orally of the need to preserve all records.
In April 2011, Evidox made arrangements to come to the offices of the defendant Venus Capital Management (‘Venus”) for the purpose of collecting hard copy files. The plan was to scan the files into an electronic database so that the information could then be electronically searched. Within days of the date on which Evidox was scheduled to retrieve the hard copy documents, Venus’s Chief Executive Officer, defendant Vikas Mehrotra, took it upon himself to review the documents first and to discard whatever he determined not to be relevant to the litigation. This decision was in direct violation of the instructions he had received from his own counsel. Moreover, this Court does not credit Mehrotra’s claim that this was part of some “regular cleanup” or was undertaken to free up storage space.
Enlisting the assistance of Venus Chief Operating Officer Vikas Chawla, Mehrotra cleaned out four and a half 36-inch file cabinets and three or four standard sized file cabinet drawers between 4:00 and 5:30 p.m., after regular trading hours. That translates into a total of between 18,720 pages and 51,600 pages of material. No copies were made and no record was kept of what was thrown out. In sworn testimony, Mehrotra stated that many of these materials had nothing to do with the instant litigation: for example, he disposed of research reports on certain Chinese companies from 2004, brochures from industry conferences, and old telephone directories. He admitted, however, that the documents discarded did include printouts of “screen shots” of online account statements for various Venus funds, vendor invoices, and credit card statements. These documents conceivably fell within the scope of outstanding document requests from the plaintiffs.
When this came to the attention of defense counsel Anthony Bongiorno, he conducted his own investigation and determined that the Canons of Professional Conduct required him to disclose this to the Court and opposing counsel. At a hearing held on July 7, 2011, Bongiorno informed this Court that his investigation had determined that in fact his clients had destroyed documents which were responsive to the pending Rule 34 requests of plaintiffs. Bongiorno withdrew from the case, with new counsel entering an appearance. After some period of discovery relating to the spoliation issue, plaintiffs filed the instant motion.
DISCUSSION
The principles of law that this Court applies to resolve plaintiffs’ motion are well established. Once a litigant knows or reasonably should know that evidence might be relevant to a possible legal action, the law imposes on that litigant a duty to preserve such evidence. Fletcher v. Dorchester Mut. Ins. Co. 437 Mass. 544, 553 (2002), see also Kippenham v. Chaulk Services, Inc., 428 Mass. 124, 126-27 (1998). Where that duty has been breached, whether negligently or intentionally, sanctions are appropriate, with the court given considerable discretion to craft a remedy that will address the “precise unfairness that would otherwise result.” Westover v. Leiserv, Inc., 64 Mass.App.Ct. 109, 113 (2005), quoting Fletcher, supra. As a general rule, the judge should impose the least severe sanction necessary to remedy the prejudice to the nonspoliating party. Keene v. Brigham and Women’s Hospital, Inc., 439 Mass. 223, 235 (2003); see also Anderson v. Beatrice Foods Co., 900 F.2d 388, 395 (1st Cir. 1990) (judge should “take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms”). In determining which sanction to impose upon a finding of spoliation of evidences the court should take into account the wilfulness of the conduct in question together with the danger and the extent of any prejudice to the party deprived of the evidence.
Here, there is no question that the conduct was wilful. Mehrotra was aware of his duty to preserve records, including hard copies of documents, when he made the decision to destroy thousands of pages of materials. His explanation for this — that it was part of a routine “cleanup” — is not credible in light of the timing: the destruction occurred within days of Evidox’s appointment to come to Venus’s offices to view the materials for itself. There is also no real dispute that the documents destroyed included materials which fell within the scope of plaintiffs’ pending Rule 34 requests and were therefore relevant. That Mehrotra may have believed (as he testified) that most of the information contained in these documents could be found elsewhere in documents that were stored electronically does not make these documents any less relevant. Moreover, the discarded documents may well have included handwriting or notes which would not be maintained in electronic form. Mehrotra has never attempted to put together a list of what was destroyed, so this Court (and the plaintiffs) have only his word to go on. That he decided to take the action that he did even after being specifically told by his *475 attorney to retain records itself suggests that he may have had something to hide.
Whether there are alternative sources for the information and how important the documents would have been to the plaintiffs, however, are both key considerations in determining the level of prejudice. With regard to credit card statements and vendor invoices, defendants contend that all such expenses would have been scanned and then emailed to Venus accounting staff at Catamaran in India. Thus, the information is either among the e-discoveiy already produced to the plaintiffs or can be obtained directly from Catamaran.[3] As to the screen shots of the account statements, any trading acüviiy would also appear (according to the defendants) in at least three other electronic versions. Again, this electronic information has been or will be produced. To date, the defendants appeared to have been fully cooperative in turning over all electronic discovery, placing no restrictions on Evidox and producing more than 1.4 million pages of responsive documents in electronic format. Finally, plaintiffs’ counsel conceded at the hearing that plaintiffs already have substantial evidence to show that defendants intentionally closed down one hedge fund and opened another using the identical investment strategy in order to cheat the plaintiffs out of the fees they had won in the arbitration. Indeed, the smoking gun (if there is one) consists of various emails to and from Venus investors in 2008 that have already been produced to plaintiffs. Accordingly, the material which was destroyed would not appear to go to the heart of the plaintiffs’ case.
That being said, this Court concludes that Mehrotra’s conduct cannot go unsanctioned. Although the prejudice to plaintiffs is not so strong as to justify default, there is certainly a potential that some relevant information has been irretrievably lost, and could have been of some benefit to plaintiffs’ case. More important, the conduct was intentional and given the circumstances, in bad faith. The judicial system depends in large part on the integrity of those who participate in it. Whenever relevant evidence is destroyed, that has a “pernicious effect on the truth finding function of our court.” Fletcher v. Dorchester Mut Ins. Co., 437 Mass. at 553. Also, this kind of conduct imposes significant costs on opposing counsel and requires the expenditure of judicial resources. It should not go unpunished.
Accordingly, it is hereby ORDERED that:
1. Defendants shall pay all attorneys fees and costs incurred by plaintiffs in connection with this motion. Plaintiffs shall serve on defendants within fourteen days a motion seeking a specific amount, accompanied by an affidavit detailing such costs and expenses. Defendants may respond within ten days thereafter, with the papers filed in the manner provided by Superior Court Rule 9A.
2. At trial of the plaintiffs’ claims, the Court will permit plaintiffs to introduce evidence of Mehrotra’s conduct as set forth herein. The Court will instruct the juiy that it may infer from that conduct that additional relevant materials existed and were not produced as a result of Mehrotra’s conduct, and that such materials would have provided evidence of facts supportive of plaintiffs claims.

That arbitration award was confirmed by this Court (Gants, J.) and final judgment entered in January 24, 2008. See Idnani et al. v. Mehrotra et al., 08-0301 BLS.

At the hearing on the instant motion, defense counsel assured the court that he would make every effort to assist plaintiffs in obtaining those records, even though they are technically in the possession of third parties, including foreign corporations.