## Rocco Vigorito *vs.* Ciulla Builders, Inc.

No. 00-P-1422.

Middlesex. October 3, 2002. - February 25, 2003.

Present: Armstrong, C.J., Kaplan, & Duffly, JJ.

*Negligence,* Construction work. *Damages,* Tort, Repairs, Replacement or reconstruction of building. *Practice, Civil,* Preservation of evidence, Loss of evidence.

In an action against a contractor for negligence arising from damage caused to a portion of the plaintiff's ceramic tile floor in which replacement or reproduction of the damaged tiles proved not available, the judge did not, in the circumstances, err in rejecting the market value measure of determining damages and adopting the restoration (repair) measure. [451-453]

In a negligence action in which the defendant moved to bar the plaintiff from presenting evidence of damages other than the cost of replacing certain ceramic tiles the defendant had damaged, based on an exemplar of the tile having been lost after the plaintiff had turned it over to his insurer, the judge did not err in denying the "spoliation" motion, where there was no negligence in the entrustment to the insurer, and even if the insurer was taken to have been acting for the plaintiff and its conduct attributable to him, the insurer, and so the plaintiff, was not shown to have been negligent. [453-455]

Civil action commenced in the Malden Division of the District Court Department on July 2, 1992.

On removal to the Superior Court Department, the case was tried before *Elizabeth Butler,* J.

*Stephen H. Lash* (*Howard P. Blatchford, Jr.,* with him) for the defendant.

*Marc D. Padellaro* for the plaintiff.

Kaplan, J. In light of the verdict the jury brought in for the plaintiff, they may be taken to have found that the defendant, by a negligent act, caused damage to a portion of the plaintiff's floor of ceramic tiles, and as replacement or reproduction of these damaged tiles proved not available, the defendant was

responsible for the repair cost of retiling the entire floor. The defendant claims error in the measure of damages applied, and also in the denial of a threshold motion regarding "spoliation" of evidence. The judgment will be affirmed. We start with an account of the trial.

*Plaintiff's case.* In spring, 1990, the plaintiff Rocco Vigorito owned and, with his family, resided in a house at 4 Partridge Lane, Saugus, which he had built in 1988 at a cost of some $350,000 (excluding cost of land). In April, 1990, the plaintiff decided to extend the second floor sun deck or patio from the master bedroom area over the roof of the garage. For this job he engaged by contract a "framer and roofer" company, the defendant Ciulla Builders, Inc., of which Michael Ciulla was the proprietor.

With work under way on April 20, and rain forecast, Ciulla placed nylon construction tarpaulins for security over the unfinished deck and materials. The weather came as promised, but the rain and wind seem greatly to have exceeded expectations: Ciulla testified the storm was "as bad as it could get." The tarpaulins were blown open and water poured into the house and fell to the first floor through any aperture including the lighting fixtures. The water took on a brownish tinge from contact with some substance on the deck. Ciulla, on the scene that morning, abandoned hope of working from the outside, and came to the front entrance door intending to use the interior stairway to reach the deck. He was turned back by the rather fastidious Mrs. Vigorito who, despite the damage around her, was still concerned with possible damage to the stairs from Ciulla's muddied boots. Ciulla went to his truck outside, drew out a ladder, and brought it to the foyer of the house; evidently this would enable him to reach the deck without using the stairs (here the record is meager). By some mischance, in trying to put the ladder in place, Ciulla struck a sizable chandelier overhanging the foyer. Ciulla testified frankly: even in the emergency he might have done better. Three tiers of the crystal beads together with the metal part of the chandelier crashed to the tile floor. The impact damaged an area of tiles below the chandelier and nearby; chipping or other kinds of injury compromised the glazed surfaces.

The tiles proper were thirteen inches square and accompanying insert medallions two inches square, with grout at the joints. The tiles had been cemented onto the layer of tar paper with wire mesh stapled to the plywood base of the flooring. Covering the whole extent of the first floor, some 2,000 square feet, the tiling was continuous; as open entries were used in lieu of doors, the tiling did not encounter and stop at any thresholds. The tiles had been imported from Italy through a local retailer and consisted of baked clay with glaze of a "graffitio beige" color. The stylish floor apparently was a memorable feature of the house. Including installation expenses, the tiling cost about $60,000 when newly laid down in 1988.

Settlement was agreed to covering the losses — Liberty Mutual Insurance Company (Liberty Mutual) was the plaintiff's insurer, Phenix Mutual Fire Insurance Company the defendant's — except for the loss specifically attendant upon the collision of ladder with chandelier.[1] The amount of such consequent loss was uncertain. First, there was a (relatively minor) question of the size of the area or number of the struck tiles; one estimate put the number at between 50 and 100, others at less. The second (important) question was whether the broken tiles could be matched by available tiles or reproduced through fresh manufacture by some company to be found willing and able to do it. If either procedure proved feasible, the particular broken tiles could be replaced at small cost, otherwise all the tiles must be pulled up and replaced with a new tiling. The computation of damages in a putative lawsuit would be determined on these lines.

The plaintiff had one original untouched tile which he turned over to Terry Vazquez, a public adjuster. Vazquez soon learned as the result of information received from "Rio," the Italian

---

[1]The course of procedure, as outlined by defense counsel: Previously the instant action was consolidated with a subrogation action by Liberty Mutual against Ciulla Builders, the present defendant, concerning damages for which Rocco Vigorito, the present plaintiff, was compensated by Liberty Mutual, excepting only the physical damage to Vigorito's tile floor. The subrogation action for the non-floor damages was settled with release and stipulation. Because of Vigorito's dissatisfaction with a reference award (dated September 24, 1991, in the amount of $29,315) for the floor damage, he has released Liberty Mutual of its liability to him for that damage, and brought the instant action against Ciulla Builders.

manufacturing source of the original brand of tiles, that the brand was exhausted and would not be fabricated again. Starting as early as August, 1990, Vazquez tried to match the exemplar with any tiles available through the retailer, Tony's Imported Tiles of Stoneham, with which the plaintiff had first dealt. No match appeared. Vazquez did not attempt to find a manufacturer who, given the exemplar, might reproduce it; he was not aware of such a possibility. Finally, Vazquez returned the exemplar to Liberty Mutual.

The plaintiff on July 2, 1992, two years after the loss, commenced the present action. The complaint charged the defendant company with negligence; alleged that "the tile was unique, not made anymore and cannot be fixed"; and claimed damages of $66,000, the alleged cost of redoing the whole floor with new tiling.

On the defendant's side, in spring, 1994, its counsel with his expert, while visiting the house to inspect the floor, asked the plaintiff for a sample tile. The plaintiff replied he had seen to the delivery of his exemplar to Liberty Mutual, and as for tearing up tiles from the floor, his wife would not allow it. On May 16, 1994, the defendant's counsel wrote to Liberty Mutual with copy to plaintiff's counsel. He said he had located a company (without naming it) that could reproduce custom tiles. For the purpose, however, he needed a sample tile. The plaintiff had informed him he had given his exemplar to a Liberty Mutual representative, and counsel now asked to be provided the tile. As far as appears, the letter remained unanswered.[2]

Without any showing of fault on Liberty Mutual's part, the exemplar it received from Vasquez was lost. The trial record does not tell us when the disappearance occurred or when the parties or their representatives became conscious of it.

In early 1996, the plaintiff took up all the remaining cemented tiles from the floor and discarded them. Testifying, the plaintiff said his wife after six years could not bear keeping the floor in unkempt condition. The plaintiff retiled the floor with granite in

---

[2]The substance of the letter was as indicated but the letter itself was not offered in evidence at the trial. The full text, including a reference to discovery under Mass.R.Civ.P. 34, 365 Mass. 792 (1974), was set out in the motion in limine considered *infra*.

February, 1996, at a cost of $66,000. (Trial of the action commenced on March 23, 1998.[3])

*Defendant's case.* An appraiser, Mark Stevens, testified he had visited the premises in Saugus four times in the interval between July, 1990, and January, 1991, and had tried to figure how many tiles had been struck by the crystal beads and metal. He could make out a case that as few as fourteen were so affected. He borrowed the exemplar from Liberty Mutual (thereafter he duly returned it) and with it made inquiries at Tony's Imported Tiles and five similar retailers. He concluded that the critical tiles could not be matched with existing tiles[4]; he had never heard of reproducing such tiles and did not know whether it was possible. That possibility was raised in his mind, he said, by what he had learned on this day of trial (evidently referring to the anticipated testimony of Cris Larsen, the defendant's remaining witness).[5]

Cris Larsen was a general contractor with some experience installing ceramic tiles. He did not come into the case until April, 1994, when he visited the house and took pictures intended, apparently, to fix the area or number of tiles affected by the loose ladder episode. It was only by memory, rather than from notes that could have been made at the time, that he was now attributing the individual pictures to particular locations on the layout of the floor. He had not looked into the makeup of the chandelier or how it had suffered by collision, leading to the impact on the area below.

As to finding a company that might fabricate replacement tiles, this, he said, would require an exemplar, but he made no reference to the specimen lodged with Liberty Mutual. He began to testify about a California company (unnamed) that might qualify as a reproducer, but hearsay objections were sustained as to conversations with the company, and no direct evidence

[3]Witnesses on the part of the plaintiff, besides himself, were Ciulla, Vazquez, and Andriano Carullo (floor installer in 1996).

[4]Stevens also said there were eight tiles at Tony's that did match, therefore not enough to replace the fourteen damaged tiles he predicated.

[5]Stevens remarked there were many tiles on the floor which upon installation or by wear and tear were chipped or otherwise depleted as much as the critical tiles struck by the beads and metal. Thus, he intimated disparagingly, there was little need to search for a match or reproduction.

was forthcoming. Larsen testified more generally about his efforts to find a suitable company to undertake such a job, but his answers to questions about the nature of the search and the availability and capacity of any candidates were vague or feeble. He was reduced to saying that he had consulted with "professionals" who thought the tiles could be reproduced. Ultimately, the witness ventured the opinion that fourteen matching tiles could be fabricated for a price of $40 to $50 per tile, for a total cost of no more than $1,500.

*Instructions.* Motions for a directed verdict were denied and the judge charged the jury. It was for the jury to decide whether the defendant acted negligently (in the conventional sense) in the ladder episode. If yes, then they should consider what physical injury followed as a result (taking as a base the condition of the site just as the accident found it). Next, the jury should picture the replacement needed for the damaged tiles or, if required by an inability to match or reproduce the originals, then the redoing of the tiling of the entire floor. The measure of damages in dollars for the repairs would follow suit, care being taken not to allow the plaintiff any amount for "betterment" above restoration to the condition just before the accident.

The jury put the question to the judge, was it the defendant's responsibility to show by a preponderance of evidence that the damaged tiles could be matched or reproduced, or the plaintiff's to show they could not be? The judge answered, supposing the jury find the plaintiff has carried his burden of proving injury to an area of tiles, it is for him to show the entire tiling has to be redone because the particular tiles could not be matched or reproduced.

The jury brought in a verdict of $30,000 for the plaintiff.[6]

*Appeal.* 1. *Ascertaining amount of damages.* The defendant did not object in clear terms to the judge's instructions on measure of damages. We overlook the unclarity because the

---

[6]The defendant's appeal is from the denial of the defendant's motion for a new trial or remittitur to $1,500 as well as from the judgment for the plaintiff. The motion does not require separate consideration. Insofar as the defendant argues there was insufficient evidence of the defendant's negligence, response is hardly necessary, and the point about the in limine motion is raised in the direct appeal.

defendant earlier indicated its position. In moving for a directed verdict at the close of the plaintiff's case, the defendant pointed out that the plaintiff had not offered proof of the fair market value of the property before and after the tortious injury. That is, indeed, the measure often applied. See *Hopkins* v. *American Pneumatic Serv. Co.*, 194 Mass. 582, 583 (1907); *Medford Hous. Authy.* v. *Marinucci Bros. & Co.*, 354 Mass. 699, 703-704 (1968). But there are many situations where that measure would be inapt or impracticable, and courts adopt more appropriate formulas. More particularly, there is precedent for rejecting the market value measure in suitable circumstances and adopting restoration (repair) costs. An early example is *Bowen* v. *Jones*, 234 Mass. 90, 92 (1919):

> "While the difference in market value of land before and after trespass thereon is often the correct rule, it is not applicable to a case of this kind. Ordinarily, it would be difficult, if not impossible, to prove the market value of a family cemetery . . . . If, as the judge may have found, the most economical way of repairing the injury done was by removing the gravel used in building the road [that the defendant installed in the plaintiff's cemetery] and restoring the burial ground to its original condition, the measure of damages adopted [cost of restoration] was correct."

See *Dalton* v. *Demos Bros. Gen. Contractors, Inc.*, 334 Mass. 377, 379 (1956) (restoration cost adopted where less than diminution in market value); *Correia* v. *New Bedford Redev. Authy.*, 375 Mass. 360, 362 (1978) (best measure of value of property taken was current cost of reproducing it with deduction for pre-taking depreciation from deterioration and obsolesence); *Trinity Church in the City of Boston* v. *John Hancock Mut. Life Ins. Co.*, 399 Mass. 43, 48-49 (1987) (for structural damage to church, diminution in market value not ascertainable, so reasonable cost of replacement or reconstruction to former condition is adopted); *Massachusetts Port Authy.* v. *Sciaba Constr. Corp.*, 54 Mass. App. Ct. 509, 515, 518 (2002) (cost of replacement of burned pier, taking account of pre-damage obsolescence, was proper measure where there was no market value, as authority had statutory duty to maintain pier for public use). The restoration (repair) measure, as on occasion a preferable alternative to a market value measure, is recognized for

cases of tortious injury to property by Restatement (Second) of Torts § 928 (1979).

In the present case, where (as the jury evidently found) the entire tiling was affected by the tort, imagination would be strained by trying to adduce evidence and figure the market value of the tiles as they lay cemented in place before and after the event. One doubts there is any cognizable market for such impacted goods. The problem is hardly eased if market value is sought for the entire house, containing the tiled floor, before and after. The defendant's insistence on market value theory appears unrealistic. In its brief the defendant announces the supposed formula and stops there. The judge found it more sensible to instruct the jury in terms of the restoration (repair) costs, with a caution against charging the defendant for so much of the restoration as would improve (better) the condition of the tiling above the level at the time of the accident. There was evidence before the jury of actual costs of restoration which Larsen thought "a tad high," and Stevens thought substantially too high. Stevens's testimony suggested much of the tiling was in impaired condition at the time, which invokes a "betterment" deduction. The jury saw many photographs of sundry parts of the tiling and heard testimony about them. The verdict sits well as the relatively moderate product of a restoration approach and deserves respect. "[W]e would not disturb the verdict[] if, by any line of reasoning, the jury might have made a correct assessment of damages." *Simon* v. *Solomon*, 385 Mass. 91, 107 (1982).

2. *"Spoliation" (motion in limine)*. The defendant, on the morning of the day of trial, laid before the judge a motion to bar the plaintiff from presenting evidence of damages other than the cost of replacing the tiles physically damaged by the ladder incident (amounting, according to the defendant, to $1,500).[7] This was required, the defendant contended, by the Massachusetts spoliation rule of *Nally* v. *Volkswagen of America, Inc.*, 405 Mass. 191, 197-198 (1989), and other cases. See *Kippenhan* v. *Chaulk Servs., Inc.*, 428 Mass. 124, 126 (1998);

---

[7]The question of the extent of the evidence to be excluded, if the spoliation motion were granted, is commented upon in note 9, *infra*.

*Fletcher* v. *Dorchester Mut. Ins. Co.*, 437 Mass. 544, 548-551 (2002); *Bolton* v. *Massachusetts Bay Transp. Authy.*, 32 Mass. App. Ct. 654, 657 (1992).[8] The rule speaks of a party who, aware that a piece of evidence in his hands is relevant to the case, destroys or otherwise dispatches it: where the party does this deliberately or even negligently to the potential prejudice of the adversary, he will be barred from offering related testimony at trial.[9] The party moving the exclusion has to demonstrate the justification, for "[t]he general rule to be followed . . . is that all relevant evidence is admissible unless within an exclusionary rule." *Poirier* v. *Plymouth*, 374 Mass. 206, 210 (1978).

The judge had to glean the circumstances from the papers accompanying the motion and the representations of counsel, as voir dire was not requested. The following appeared. The plaintiff had turned over his exemplar to Liberty Mutual. Defendant's counsel orally requested an exemplar from the plaintiff in early 1994 and, on being referred to the sample with Liberty Mutual, sent the letter of May 16, 1994, to the insurer requesting access to the exemplar and referring to Mass.R.Civ. P. 34, as amended, 385 Mass. 1212 (1982).[10] Later the defendant's counsel learned the exemplar was lost. Neither counsel offered any information about the circumstances of the loss. At this stage the defendant did not renew his request

---

[8]The United States Court of Appeals for the First Circuit does not confine the spoliation remedy to exclusion of testimony, but does permit it when appropriate. See *Nation-Wide Check Corp., Inc.* v. *Forest Hills Distrib., Inc.*, 692 F.2d 214, 217-218 (1st Cir. 1982); *Sacramona* v. *Bridgestone/Firestone, Inc.*, 106 F.3d 444, 446 (1st Cir. 1997).

[9]Since we agree with the trial judge that the spoliation motion should be denied, we need not undertake to discuss fully just what evidence might be excluded if the motion were allowed. The spoliation decisions deal with simpler facts and do not speak clearly to the present case. The defendant suggests in its brief that substantially all of the plaintiff's case would be excluded, except evidence of the cost of replacing the tiles struck, say $1,500 (which presumes that matching the tiles struck or reproducing them was feasible). More cogent, perhaps, might be the exclusion of evidence raising any doubt that a ripped-up tile could serve as a proper exemplar (which would still leave questions whether reproduction, even with a proper exemplar, was feasible).

[10]Concluding, the letter stated, "please consider the requests for the above information, documents and things as a request for production of documents and things pursuant to M.R.Civ.P. 34."

of the plaintiff[11] or pursue any procedural rights under rule 34. So the plaintiff could think the defendant had found its way to prepare to make some showing at trial that the tile could be replaced or reproduced (there was an affidavit of Cris Larsen that he had found a California company able, it said, to reproduce the tile if shown an exemplar).

There was apparent agreement between counsel that when the plaintiff disposed without notice of the remaining tiles after holding them for six years despite his wife's displeasure, he was not acting with malign intent to gain a forensic advantage. And the judge indicated the plaintiff had not acted negligently — "I further find that the plaintiff did provide a piece of tile to Liberty Mutual and had a right to rely upon the fact that that would be available to [the] defendant." We comment there was no negligence in the entrustment to the insurer, and even if the insurer is taken to have been acting for the plaintiff and its conduct attributable to him, the insurer and so the plaintiff is not shown to have been negligent.

Although the judge declined to exclude the evidence described, she pointed out the defendant was free to make use in its own behalf of any part of it. For example (we comment) counsel might suggest to the jury that the disposal of the tiles made the defendant's case harder to present. We think this was, indeed, intimated during trial, and could have figured in the closing speech of the defense which, however, was not transcribed.

In sum, we hold the judge did not err in denying the spoliation motion.

*Judgment affirmed.*

---

[11]Plaintiff's counsel indicated the plaintiff in an extremity would have allowed the defendant to rip up a sample, but said the ceramic floor was a "mud job" and a salvaged tile would not furnish a suitable exemplar.