VICTORIA K. WESTOVER vs. LEISERV, INC.[1]; REGAL
MANUFACTURING, third-party defendant.

No. 03-P-1111.

Middlesex. February 15, 2005. - July 25, 2005.

Present: GREENBERG, SMITH, & GREEN, JJ.

*Negligence,* Spoliation of evidence, Defective product, Design. *Practice, Civil,*
Preservation of evidence, Loss of evidence.

In the circumstances of a complaint seeking contribution and indemnification
from a chair manufacturer for damages incurred by the plaintiff in defend-
ing against an action arising out of personal injuries caused by an alleged
design defect in the chair, the motion judge erred in ordering an exces-
sively severe sanction against the plaintiff (who had discarded the chair
after the accident), excluding any evidence as to the condition or appear-
ance of the chair prior to the accident and granting summary judgment in
favor of the manufacturer, where the destruction of the evidence did not
unduly prejudice the manufacturer, given the availability of other chairs,
properly preserved as evidence by the plaintiff, that were substantially
similar to the accident chair, and which the manufacturer's experts could
examine to ascertain the identity of the manufacturer and to determine
whether a design defect was present. [112-114]

CIVIL ACTION commenced in the Superior Court Department on
December 19, 2000.

The case was heard by *Thomas P. Billings,* J., on a motion
for summary judgment.

*Kelly R. Spencer* for Leiserv, Inc.

*John C. DeSimone* for Regal Manufacturing.

SMITH, J. In December of 2000, Victoria K. Westover brought
a complaint in the Superior Court seeking damages for personal
injuries she sustained while using a chair at the Brunswick
Lowell Lanes (Brunswick) bowling alley. Brunswick, in turn,
brought a third-party action against Regal Manufacturing

[1]Doing business as Brunswick Lowell Lanes.

(Regal), the alleged manufacturer of the chair in question, alleging negligence in the design, manufacturing, testing, inspection, distribution, and marketing of the chair as well as lack of adequate safety features and warnings, and sought contribution and indemnification from Regal.[2]

Brunswick discarded the chair after the incident. Regal brought a motion for summary judgment claiming that the proper sanction for Brunswick's disposing of the chair would be the exclusion of any evidence, offered by Brunswick, as to the condition of the chair prior to the accident, and that without such evidence, Brunswick could not make its case against Regal.

In August of 2002, a Superior Court judge denied Regal's motion, stating that "[i]t is not at all clear that defendant/moving party is entitled to the broad exclusion of evidence, on a theory of spoliation, that is the basis for this motion. Unless and until there is a court ruling excluding such evidence (which this Court declines to make at this stage in the litigation and which it doubts that defendant will be successful in obtaining even later in this lawsuit), there are substantial issues of material fact in dispute in this case, such that summary judgment is inappropriate."

After discovery was completed, Regal brought the motion that is the focus of this appeal, which essentially restated its earlier motion for a preclusive sanction against Brunswick and sought summary judgment. By an order dated March 3, 2003, a second Superior Court judge (motion judge) allowed Regal's motion for summary judgment. The motion judge ruled, "[o]n the record before me — more fully developed than at the time of [the] August 8, 2000 order — a preclusionary order seems plainly appropriate, prohibiting Brunswick from presenting in its case against Regal any testimony concerning the condition or appearance of the 'accident' chair. From such an order it follows that Brunswick cannot make out a prima facie case, and that summary judgment should follow."

---

[2]Westover did not sue Regal; she settled her action against Brunswick and is not a party to this appeal. According to the record, Regal upholsters the seats and chair backs, and assembles them to frames that it purchases. A representative from Regal testified that Regal purchased metal chair frames from two different manufacturers during the period when the accident chair was likely produced.

On appeal, Brunswick claims that the motion judge committed error in granting summary judgment under the spoliation doctrine based on the unavailability of the accident chair. In the circumstances of this case, and for the reasons stated herein, we conclude that it was an abuse of discretion to preclude Brunswick from presenting any evidence of the condition and appearance of the accident chair, and therefore conclude that Regal was not entitled to summary judgment.[3]

We first consider whether the sanction order was too severe and then discuss whether summary judgment should have been granted.

*Background.* The record before the motion judge consisted, among other things, of the depositions of Westover, Brunswick's general manager Michael Gaul, and Regal's president.[4]

On Friday evening, September 29, 2000, having bowled for a while, Westover went to Brunswick's lounge area. There were some forty chairs in the lounge. The chairs had been obtained from a Chicago area bowling alley also owned by Leiserv, Inc., Brunswick's parent company. As Westover was pulling one of the chairs under herself in order to sit down, the leg of the chair separated from the seat and a sharp piece of metal cut off the tip of her index finger. The two metal tabs which were attached to the front two corners of the chair seat, securing the seat to the metal chair, were cracked at their respective welding points. As a result, the chair seat had become detached from the front of the metal chair frame, exposing a sharp piece of metal.

Gaul, who was at the bowling alley at the time, came over and inspected the chair. He noticed that the weld of the chair was broken and that the chair seat was detached from the front of the metal chair frame on both the left and right sides. Westover's brothers also examined the accident chair and told her

---

[3]Brunswick also claimed that because the first motion judge denied Regal's motion, the second motion judge had no jurisdiction to allow the motion. We reject Regal's claim. See *Goulet* v. *Whitin Mach. Works, Inc.,* 399 Mass. 547, 554 (1987).

[4]We note that Regal did not move for a sanction under Mass.R.Civ.P. 37, as amended, 423 Mass. 1406 (1996); rather, Regal's request for a sanction as to the spoliated evidence was incorporated into its motion for summary judgment. The better practice is to file a motion for sanctions under rule 37 and a separate motion for summary judgment if the motion for sanctions is allowed.

that the welds on the chair were broken. Gaul asked one of Brunswick's employees to take the chair to the back room, intending that the chair be preserved. He did not, however, instruct the employee to put a note or sign on it stating that the chair must not be discarded.

The following Monday, Gaul discovered that the accident chair had been discarded as trash by another employee. Gaul attempted to retrieve it from the trash area but it had already been picked up. Gaul proceeded to look at the other chairs in the lounge and found that approximately six chairs had broken metal welds, "the exact same defect," according to his deposition, that he observed in the accident chair. Gaul removed those chairs and secured three of them, which he asserts were identical or substantially similar in appearance and defect to the accident chair. Although Gaul did not observe a Regal label on the accident chair, he did remove a Regal tag from one of the other chairs in the lounge.[5] Photographs of the three secured chairs were shown to Westover and to Regal's president. Westover agreed that the chairs in the photographs were substantially similar to the accident chair. Regal's president stated that the photographs depicted chairs that were similar to chairs that Regal once manufactured.[6]

Throughout the discovery process, Brunswick revealed that it intended to produce an expert witness to testify about the failure mode of the weld that was used to join the front seat tabs to the chair frame. The expert would have testified that the defect was a design defect present in all of the chairs in that model line.

*Discussion.* The doctrine of spoliation "is based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant for an upcoming legal

[5]There was confusion in the record before the motion judge as to which chairs had the Regal tag that Gaul removed. In his affidavit submitted in opposition to Regal's motion for summary judgment, Gaul indicated that he removed Regal tags from two of the chairs that he had set aside. In his deposition, Gaul testified that he was "not sure if [the tag] was [removed from] one of those [chairs] or not." The motion judge noted that the Regal tag was removed from another similar chair in the lounge.

[6]Regal's president also confirmed that the tag that Gaul removed from a chair was an authentic Regal tag. He also indicated that in some cases, some customers preferred to have their own name on the chairs manufactured by Regal, rather than Regal's name.

proceeding should be held accountable for any unfair prejudice that results." *Keene* v. *Brigham and Women's Hosp., Inc.*, 439 Mass. 223, 234 (2003). See *Kippenhan* v. *Chaulk Servs., Inc.*, 428 Mass. 124, 127 (1998) (negligent destruction of evidence is sufficient to constitute spoliation).

It has been "implicitly recognized that persons who are actually involved in litigation (or know that they will likely be involved) have a duty to preserve evidence for use by others who will also be involved in that litigation." *Fletcher* v. *Dorchester Mut. Ins. Co.*, 437 Mass. 544, 549-550 (2002). The record before the motion judge establishes, and Brunswick concedes, that Gaul's conduct in attempting to preserve the chair demonstrated that he was aware that Brunswick would likely be involved in future litigation because of the injury to Westover, and therefore, Brunswick had a duty to preserve the chair. See *id.* at 550. Thus, the record before the motion judge established spoliation of the evidence.

Once spoliation has been established, the judge has the discretion to craft a remedy addressing "the precise unfairness that would otherwise result." *Ibid.* The remedies may range from an instruction that the jury may draw an adverse inference against the party who destroyed the evidence to the exclusion of evidence related to that which was destroyed. See *Gath* v. *M/A-Com, Inc.*, 440 Mass. 482, 488 (2003). The latter sanction may result in the end of the case because the party against whom the exclusionary order is made is prevented from making out a prima facie case. See *Fletcher* v. *Dorchester Mut. Ins. Co., supra* at 550-551. "As a general rule, a judge should impose the least severe sanction necessary to remedy the prejudice to the nonspoliating party." *Keene* v. *Brigham and Women's Hosp., Inc., supra* at 235. Here, the motion judge's order excluding any testimony regarding the condition or appearance of the accident chair imposed the ultimate sanction on Brunswick because, as a result, Brunswick could not make out a prima facie case against Regal.

In imposing the exclusionary order, the motion judge ruled that without such an order, Regal would be unfairly prejudiced by Brunswick's negligent destruction of the accident chair. On appeal, Brunswick argues that the sanction was too severe and,

in the circumstances of this case, Regal was not unduly prejudiced. Regal argues that it was prejudiced by the negligent destruction of the accident chair because its experts could not examine the chair to ascertain whether Regal did manufacture it and, if so, whether there was a design defect in the chair.

In the rather unusual circumstances present, there was evidence that the chairs set aside by Gaul were substantially similar to the accident chair. Indeed, Regal's president stated that the chairs were similar to chairs Regal had manufactured. Thus, Regal's experts could examine those chairs in order to determine whether Regal had manufactured the accident chair.

Further, we note that Brunswick is alleging a design defect in the entire product line of all of the chairs of the same make and model as the accident chair. In design defect cases, "a party's examination of the individual product at issue may be of lesser importance as the design defect alleged can be seen in other samples of the product." *Collazo-Santiago* v. *Toyota Motor Corp.*, 149 F.3d 23, 29 (1st Cir. 1998). Thus, Regal would not be prejudiced by the negligent loss of the accident chair because its experts (as well as Brunswick experts) could examine the secured chairs and present their opinions as to an alleged design defect.

We hold, in the circumstances of this case, that the motion judge's exclusionary order as to the condition or appearance of the accident chair was too severe, especially where Brunswick is claiming a design defect in an entire line of certain chairs. Therefore, a less severe sanction such as instructing the jury as to the inferences that may be drawn against Brunswick for its negligent destruction of the accident chair may be sufficient. In any event, we leave the appropriate sanction to the trial judge provided that he or she does not totally exclude all evidence as to the appearance and condition of the chair.[7]

Accordingly, we vacate the exclusionary order of the motion judge and reverse the order granting summary judgment.

*So ordered.*

---

[7] As noted previously, the record shows that Gaul was not the only person who saw the defect in the accident chair. Westover's brothers, who are not a party in this action, also saw the defect.