NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-504                                            Appeals Court

KELVIN SANTIAGO & others[1]  vs.  RICH
PRODUCTS CORPORATION & others.[2]

No. 16-P-504.

Middlesex.      September 8, 2017. - December 28, 2017.

Present:  Milkey, Hanlon, & Shin, JJ.

Negligence, Spoliation of evidence, School.  Food.  School and
    School Committee, Liability for tort.  Practice, Civil,
    Instructions to jury, Summary judgment.

        Civil action commenced in the Superior Court Department on
August 21, 2006.

        A motion for summary judgment was heard by Garry V. Inge,
J.; the case was tried before Bruce R. Henry, J., and the entry
of judgment was ordered by him.

        Marc Diller (Jonathon D. Friedmann also present) for the
plaintiffs.
        Myles W. McDonough for Rich Products Corporation & others.

_____

        [1] Julia Rivera and Juan Santiago, individually and as next
friends of Kelvin Santiago.

        [2] Rich-Seapak Corporation, Casa Di Bertacchi Corporation,
and the city of Lowell.

Hannah B. Pappenheim, Assistant City Solicitor (Elliott Veloso, Assistant City Solicitor, also present) for city of Lowell.

SHIN, J. Kelvin Santiago (Kelvin) suffered traumatic brain damage after choking on meatballs served in the cafeteria of a city of Lowell (city) public school. He and his parents filed suit against the city and Rich Products,[3] the company that produced and sold the meatballs, asserting negligence and breach of the implied warranty of merchantability, among other claims. A judge allowed the city's motion for summary judgment, and, after seventeen days of trial, a jury returned a verdict in Rich Products' favor.[4] On appeal the plaintiffs claim error in the trial judge's denial of their request for an adverse-inference instruction against Rich Products for alleged spoliation of documentary evidence and in the motion judge's allowance of summary judgment for the city. We conclude that the trial judge did not abuse his discretion in declining to give a spoliation instruction because the plaintiffs failed to establish the

---

[3] The three corporate defendants are affiliated entities. We will refer to them collectively as Rich Products.

[4] The jury found that Rich Products was negligent but that the negligence was not a substantial contributing factor to the plaintiffs' injuries. They further found that Rich Products did not breach the implied warranty of merchantability by selling meatballs that were unreasonably dangerous. Although the plaintiffs argued below that these verdicts are inconsistent, they do not renew that argument on appeal.

necessary factual predicate that Rich Products lost or destroyed the missing evidence when it knew or should have known of a potential lawsuit. We further conclude that the motion judge correctly ordered the entry of summary judgment for the city because no rational jury could have found that its employees acted negligently. For these reasons we affirm the judgment.

Background. 1. The choking incident. The basic facts regarding what occurred during the incident are not in dispute.

In 2004 Rich Products began producing meatballs to sell to schools through the Federal government's National School Lunch Program. The meatballs contained a binding agent called Profam 974, which is a soy protein isolate. The use of Profam 974 enabled Rich Products to satisfy the United States Department of Agriculture (USDA) requirement that each school lunch contain two ounces of protein per student.

At 11:00 A.M. on March 15, 2006, Kelvin, then a first-grade student, went to the school cafeteria for lunch, which that day was spaghetti and four meatballs produced and sold by Rich Products. At around 11:11 A.M., a cafeteria supervisor announced that the children had four minutes to finish eating lunch. Soon thereafter, Kelvin began choking.

Various school personnel present in the cafeteria tried to dislodge the obstruction in his airway using back blows and the Heimlich maneuver. Two school nurses quickly arrived and

continued with the Heimlich maneuver, followed by chest compressions and cardiopulmonary resuscitation. At some point an employee called 911. Paramedics were dispatched at 11:15 A.M. and arrived at the school at 11:19 A.M. When they arrived, Kelvin was neither conscious nor breathing and had no pulse. Using forceps, a paramedic extracted several large pieces of meatball out of Kelvin's airway. By that time, however, Kelvin had been deprived of oxygen for too long, and he suffered catastrophic brain damage.

Immediately after the incident, the school's custodian was directed to clean up the cafeteria. While doing so, he discarded the pieces of meatball that had been removed from Kelvin's airway. The record reflects that the remaining meatballs in the school's possession were ground up and used to make spaghetti sauce.

2. _Proceedings in the trial court_. The plaintiffs filed suit just a few months later, in August of 2006. After years of discovery and motion practice, the motion judge ordered the entry of summary judgment for the city, finding the evidence insufficient to create a triable issue of whether the city was negligent. The motion judge concluded in the alternative that the city was immune from liability pursuant to certain exemptions in the Massachusetts Tort Claims Act, G. L. c. 258.

One week before the scheduled start of trial, the plaintiffs filed motions in limine seeking sanctions against Rich Products for alleged spoliation of (1) laboratory notebooks and production records from 2004 relating to the development of the formula for the meatball and (2) the results of product-development and production testing from 2004.[5]  The trial judge deferred ruling on the motions, stating that he "want[ed] to hear what the evidence is with respect to exactly what it was that was done with respect to the missing materials."

The plaintiffs' claims against Rich Products then proceeded to trial in March of 2014.  The plaintiffs' theory of the case was that the use of Profam 974 caused Rich Products' meatball to have an unreasonably dangerous texture, presenting a choking hazard.  In support of this theory, the plaintiffs presented an expert who had recreated the meatball -- using a detailed formula provided by Rich Products in answers to interrogatories -- for the purpose of comparing its texture to meatballs that did not contain Profam 974.  This expert opined that the inclusion of Profam 974 made Rich Products' meatball more difficult to chew and break apart than the others in her test

---

[5] The plaintiffs also alleged that Rich Products failed to produce a document showing that the USDA approved the meatball in 2004.  Rich Products produced that document at trial, however, after requesting it from the USDA through the Freedom of Information Act.

study.  Another of the plaintiffs' experts opined that both the size and texture of the meatball presented a choking risk to children.

At the close of the evidence, the judge asked the plaintiffs' counsel, "As far as the spoliation instruction, what information does the jury have in order for them to make a determination that normally they would have to make if I gave them that instruction?  What information do they have as to when these various categories of things were destroyed?"  Counsel responded by pointing to Rich Products' corporate policy requiring retention of documents for three years.  The judge then ruled that there was no spoliation, that he would not give an instruction, but that he would not "prevent the plaintiffs from arguing the lack of evidence in that regard."

Discussion.  1.  Spoliation.  We review the judge's decision for abuse of discretion.[6]  See Scott v. Garfield, 454 Mass. 790, 798 (2009).  Under the doctrine of spoliation, a

---

[6] We reject Rich Products' argument that, because the judge did not specify the grounds for his ruling, we should assume that he made "implicit" factual findings against the plaintiffs on every element of spoliation, which we would then review for clear error.  The argument is illogical and is not supported by the authority Rich Products cites.  Furthermore, we believe it evident from the judge's questioning that the basis for his finding of no spoliation was that the plaintiffs put forth no "information . . . as to when these various categories of things were destroyed."

judge can impose sanctions against a litigant who "negligently or intentionally loses or destroys evidence that the litigant . . . knows or reasonably should know might be relevant to a possible action, even when the spoliation occurs before an action has been commenced." Ibid. See Mass. G. Evid. § 1102 (2017). The premise underlying the doctrine is that a party who culpably destroys evidence "should be held accountable for any unfair prejudice that results." Keene v. Brigham & Women's Hosp., Inc., 439 Mass. 223, 234 (2003). The doctrine does not extend to "a fault-free destruction or loss of physical evidence." Kippenhan v. Chaulk Servs., Inc., 428 Mass. 124, 127 (1998). Thus, as the parties agree, the party seeking sanctions has the burden to "produce[] evidence sufficient to establish certain preliminary facts," Scott, 454 Mass. at 799, including "that a reasonable person in the spoliator's position would realize, at the time of spoliation, the possible importance of the evidence to the resolution of the potential dispute." Id. at 798 (quotation omitted). See Kippenhan, 428 Mass. at 127 (sanctions are not "justified if the [evidence] was destroyed, lost, or otherwise disposed of before [the litigant] knew or reasonably should have known of the possibility of a suit").

Here, the judge was within his discretion not to give a spoliation instruction because the plaintiffs offered no evidence to establish the basic threshold fact of when the

documents at issue went missing. Without establishing this threshold fact, the plaintiffs necessarily could not show that Rich Products lost or destroyed the documents when it knew or should have known of their potential significance. Consistent with the argument the plaintiffs made below, the only evidence they point us to is testimony regarding Rich Products' three-year retention policy. But even if someone at Rich Products discarded the documents before the expiration of the three-year timeframe, that still would not prove that Rich Products lost or destroyed the documents after receiving notice of this lawsuit. Indeed, Rich Products offered evidence that the documents could have been lost in 2005 -- the year before Kelvin sustained his injury -- when a reorganization of the company caused "a lot of people . . . and a lot of documents [to be] moved around." Beyond this, no evidence was presented as to the circumstances or timeframe of the loss. The judge thus acted within his discretion in finding that the plaintiffs failed to establish the necessary factual predicates of spoliation. See Vigorito v. Ciulla Builders, Inc., 57 Mass. App. Ct. 446, 454-455 (2003) (judge properly denied spoliation motion where no information was offered as to circumstances in which evidence was lost).

Moreover, even had there been spoliation, any prejudice to the plaintiffs was remedied by the judge's ruling allowing them to make use of the fact that the documents were missing. "Once

spoliation has been established, the judge has the discretion to craft a remedy addressing 'the precise unfairness that would otherwise result.'" Westover v. Leiserv, Inc., 64 Mass. App. Ct. 109, 113 (2005), quoting from Fletcher v. Dorchester Mut. Ins. Co., 437 Mass. 544, 550 (2002).  "The spectrum of remedies includes allowing the party who has been aggrieved by the spoliation to present evidence about the preaccident condition of the lost evidence and the circumstances surrounding the spoliation . . . ."  Gath v. M/A-COM, Inc., 440 Mass. 482, 488 (2003).  "As a general rule, a judge should impose the least severe sanction necessary to remedy the prejudice to the nonspoliating party."  Keene, 439 Mass. at 235.

The plaintiffs here have not shown how the alleged spoliation prejudiced them in any significant way.  With respect to the first category of missing documents -- laboratory notebooks and other records relating to the development of the meatball formula -- the plaintiffs' claim of prejudice is that they did not have "confirmation regarding the actual formula" and "the spoliated documents would have shown that Rich [Products] changed the formula one year into production."[7]  But

_____

[7] The plaintiffs' theory appears to be that the 2004 records would reveal a different formula than the one Rich Products was using in 2006, casting doubt both on the accuracy of the formula provided in Rich Products' interrogatory answers and on its claim that it made fifty-one million meatballs using the same formula without any other incidents of choking.

these issues were thoroughly explored at trial, and the testimony was consistent that, other than the removal of sesame seeds in 2006, Rich Products had made no changes to the formula since 2004.  This testimony was supported by evidence that the approval application Rich Products submitted to the USDA in 2004 set out the same formula as the application it submitted in 2010.  Also, if the plaintiffs had doubts as to the accuracy of the formula provided by Rich Products, they could have obtained comparable meatballs from the same product line for their experts to examine.  See Westover, 64 Mass. App. Ct. at 114 (movant was not prejudiced by opposing party's negligent loss of chair with alleged design defect because its experts could examine "chairs of the same make and model").[8]

---

[8] At oral argument the plaintiffs suggested that no exemplar was available because Rich Products started using a different formula shortly after the choking incident.  The suggestion seems to be based on evidence that, in August of 2006, Rich Products submitted an approval application to the USDA that listed a different formula than the one that appears on the 2004 application.  But several witnesses testified, under oath, that the 2006 application was submitted in error and that that formula was never used in production.  Moreover, even assuming the formula was changed in 2006, an exemplar would still have been available to the plaintiffs because (1) there was at least a five-month gap between when Kelvin's injury occurred and when the new formula could have been put into production and (2) the formula Rich Products was using in 2010 was the same one it was using at the time of Kelvin's injury.  Again, trial in this case did not start until 2014.

With respect to the second category of documents -- the testing results from 2004 -- the plaintiffs contend that these documents would have obviated the need for them to do their own testing "and would have contravened Rich [Products'] claim that [the] meatball had a reasonably safe texture." This is speculation. In fact, the evidence established that most of the testing was done for quality purposes, i.e., to assess whether people liked the taste and texture of the meatball. Although safety testing was also conducted, it was for the purpose of checking for bacteria and foreign contaminants, not for choking hazards.

Thus, even assuming spoliation, the judge was within his discretion, given the minimal demonstrated prejudice to the plaintiffs, to decline to give an adverse-inference instruction but to allow the plaintiffs to make use of the fact that the documents were lost. And their counsel made the most of the opportunity, referring to the loss of relevant evidence in his opening statement, questioning Rich Products' employees at length about the missing documents, and arguing in closing that the jury should find the employees not credible because they had lost the documents.[9] This was sufficient to remedy whatever

---

[9] The plaintiffs claimed at oral argument that Rich Products' counsel used the missing documents as a sword in his own closing, when he stated, "where's the evidence" that there was a change in the formula. But counsel followed that

unfairness to the plaintiffs that was caused by the missing evidence.  See Vigorito, 57 Mass. App. Ct. at 455 (while properly denying spoliation motion, judge ameliorated harm by "point[ing] out [movant] was free to make use in its own behalf of any part of" fact that evidence was destroyed).  Cf. Keene, 439 Mass. at 235 (it was within judge's discretion to impose "the least severe sanction necessary to remedy the prejudice").

2.  Summary judgment for city.  We review the motion judge's allowance of summary judgment for the city de novo, viewing the evidence in the light most favorable to the plaintiffs.  See Boazova v. Safety Ins. Co., 462 Mass. 346, 350 (2012).  To prevail on a claim of negligence, a plaintiff "must establish that the defendant owed the plaintiff a legal duty, and that a breach of that duty proximately caused injury to the plaintiff."  Petrell v. Shaw, 453 Mass. 377, 385 (2009).  Although the inquiry is ordinarily one of fact, a defendant can prevail on summary judgment "by demonstrating that the

statement by citing the evidence that was actually presented at trial -- specifically, the 2004 and 2010 USDA applications, which list the same formulas.  Also, the plaintiffs' assertion of a change in formula derives from evidence that Rich Products submitted a different application to the USDA in 2006; but the plaintiffs had the 2006 records in their possession and questioned the witnesses about them extensively.  See note 8, supra.  We cannot glean from the plaintiffs' arguments what precise prejudice they claim they suffered from the loss of the 2004 records.

[plaintiff] has no reasonable expectation of proving an essential element of his case at trial."  Id. at 381.  Put differently, "a judge may decide the issue as a matter of law when no rational view of the evidence permits a finding of negligence."  Ibid.  See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

The plaintiffs contend that the city was negligent in two ways:  by serving Kelvin a food product that was unreasonably dangerous for school-aged children and by failing to adequately supervise the students in the cafeteria.  We agree with the motion judge that the plaintiffs had no reasonable expectation of proving negligence on either of these grounds.  They presented no evidence that would allow a rational jury to find, or even infer, that the city knew or had reason to know of the alleged dangerousness of the meatball -- a USDA-approved product that the city bought through the National School Lunch Program.[10] Nor could a rational jury find that the city was negligent in supervising the students.  Although the plaintiffs claim that school employees knew that the students "engaged in food eating contests and regularly engaged in high risk behaviors," they fail to identify what the employees could have done differently

_____

[10] The plaintiffs also do not address the potential preclusive effect of the jury's finding that the meatball was not unreasonably dangerous.

to curb those behaviors so as to have prevented Kelvin's injuries.[11]  See Glidden v. Maglio, 430 Mass. 694, 696 (2000) (defendant entitled to summary judgment where "plaintiffs failed to proffer any evidence . . . establish[ing] any causal link between their injuries and the defendant's breach of any duty to them").

To the extent the plaintiffs claim that the school employees' use of back blows and their allegedly faulty administration of the Heimlich maneuver were independent acts of negligence, that claim was also properly dismissed on summary judgment.  Proof of medical causation "generally must be established by expert testimony."  Harlow v. Chin, 405 Mass. 697, 702 (1989).  See Held v. Bail, 28 Mass. App. Ct. 919, 921 (1989).  It is beyond the ken of an ordinary juror to know whether the back blows or the administration of the Heimlich maneuver might have worsened Kelvin's condition.  See

---

[11] The plaintiffs mention in passing the cafeteria supervisor's announcement that the children had four minutes left to finish their lunch, which they say "encourag[ed] these kids quickly to eat this already dangerous food."  But the announcement is not itself actionable negligence.  It simply implemented the school's decision to allot fifteen minutes for lunch, and the plaintiffs concede that that decision falls under the discretionary-function exemption to the Massachusetts Tort Claims Act.  See G. L. c. 258, § 10(b).  The plaintiffs also concede that the discretionary-function exemption bars any claim that the school assigned an insufficient number of employees to supervise the cafeteria or that the employees were inadequately trained.

Commonwealth v. Hamel, 91 Mass. App. Ct. 349, 352 (2017), quoting from Pitts v. Wingate at Brighton, Inc., 82 Mass. App. Ct. 285, 289 (2012) (expert testimony required where determination of causation required information outside "general human knowledge and experience"). Thus, the plaintiffs had to offer expert evidence to create a triable issue on their claim. They did not, nor did they raise any argument under Mass.R.Civ.P. 56(f), 365 Mass. 824 (1974), that additional discovery was necessary to respond to the city's motion. See Kourouvacilis, 410 Mass. at 716-717 (summary judgment proper where plaintiff failed to present expert evidence in support of her case); Atlas Tack Corp. v. Donabed, 47 Mass. App. Ct. 221, 227-228 (1999) (same).

In the end we agree with the motion judge's assessment that no rational view of the evidence would permit a finding that the school employees acted negligently in their response to this tragic accident. They immediately identified that Kelvin was in distress, took prompt actions to try to help him, and called 911 for medical assistance. On these undisputed facts, the motion judge was correct to enter summary judgment for the city.[12]

Judgment affirmed.

---

[12] The parties debate at length whether the city is immune from liability under the original cause exemption to the Massachusetts Tort Claims Act. See G. L. c. 258, § 10(j). Given our ruling, we need not resolve the issue.